**Pasqual R. DiCAMILLO,**

v.

**LIBERTY LIFE ASSURANCE CO., et al.**

No. CIV. JFM–03–103.

United States District Court,
D. Maryland.

Oct. 23, 2003.

Richard P. Neuworth, Lebau and Neu-worth PA, Baltimore, MD, for Plaintiff.

Henry Mark Stichel, Gohn, Hankey and Stichel LLP, Baltimore, MD, for Defendants.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff Pasqual R. DiCamillo has brought suit against Defendants Liberty Life Assurance Company ("Liberty Life") and Marriott International, Inc. ("Marriott") claiming wrongful denial of disability benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff asserts that the defendants failed to provide him a full and fair review of his benefits claim in accordance with the provisions of the benefit plan and the Department of Labor's 2002 ERISA regulations. Now pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. For the reasons stated below, to the extent the motion seeks dismissal, it will be denied. However, as a motion for summary judgment, it will be granted.

### I.

Plaintiff Pasqual R. DiCamillo was employed in the tax department of Marriott beginning in 1982. He was a participant in the Marriott Long–Term Disability Plan (the "Plan"), an employee welfare benefit plan insured by Liberty Life which falls within the purview of ERISA. Marriott is the sponsor of the plan but has delegated authority to Liberty Life to interpret the policy and determine benefit eligibility thereunder.

In 2001, DiCamillo's job title was a combination of Tax Accountant and Tax Analyst. In this capacity, he supervised a staff of three in addition to outside consultants, reviewed work product, and assisted in transactional analysis, including multi-million dollar tax audits. DiCamillo also had the responsibility of retrieving and handling files and boxes for the Tax Department. This required moving and lifting heavy boxes when necessary. Despite this physical activity, the position of Tax Analyst was classified by Liberty Life's vocational case management referral as "light duty" work, and the position of Tax Accountant was described as "sedentary."

DiCamillo suffered from severe lower back pain which interfered with his ability to work and caused him to file a claim for long-term disability (LTD) benefits with Liberty Life on November 7, 2001. DiCamillo's various health care providers di-

agnosed him as having spondylolisthesis, a condition where a vertebra in the spine slips out of alignment. At the time, he was under the primary care of Dr. Lawrence Shin, an orthopedic surgeon, as well as various other physicians, including a psychiatrist for pain treatment. He underwent numerous treatments and tests in late 2001 and early 2002 and was placed on a number of pain medications, which he complained caused him to suffer from headaches, confusion, and disorientation. According to DiCamillo, these side-effects prevented him from concentrating and making informed, rational decisions in communication with employees, Senior Vice Presidents, and others in the course of his work.

On November 15, 2001, Liberty Life notified DiCamillo that it had approved his claim for benefits pending further investigation of his claim and its collection of additional medical information. In February 2002, William Mudrick, a Liberty Life nurse, spoke with Dr. Shin who informed him that DiCamillo had not responded to treatment and that Dr. Shin's recommended treatment plan was for DiCamillo to have physical therapy for two months and to eventually have surgery to correct his condition.

That same month, DiCamillo completed Disability, Daily Activities, and Personal Pain Questionnaires sent to him by Liberty Life. He indicated that he could perform a wide range of activities including grocery shopping, cooking, and washing his car, but stated that he distrusted himself around the grill, hot stove, and moving objects. He also stated that his pain had forced him to restrict his yardwork and prevented him from sitting for long periods of time. (Def.'s Mot. to Dismiss at ¶ 19).

In May 2002, Liberty Life decided to conduct video surveillance of DiCamillo for five days. The video documentation revealed DiCamillo performing yard work and grilling food at a school cookout. On June 25, 2002, Liberty Life requested, and plaintiff consented to, an independent medical examination ("IME"). Dr. Martin Kanner, a specialist in rehabilitation medicine, examined DiCamillo and reviewed the medical information in his claim file and a copy of the surveillance videotape in addition to MRI films and a medical report provided to him by DiCamillo. Dr. Kanner concluded that DiCamillo could return to work and work eight hours per day provided that he be allowed to take breaks of fifteen minutes every two hours and that he be given a chair with good lumbar support. (Def.'s Mot. to Dismiss ¶ 27). On July 2, 2002, Liberty Life sent a copy of Dr. Kanner's report and the surveillance videotape to Dr. Shin for comment. Liberty Life never received a response from Dr. Shin.

Based on the surveillance videotapes and Dr. Kanner's IME, Liberty Life decided to discontinue DiCamillo's disability benefits and sent him a letter to that effect on July 30, 2002. DiCamillo appealed his benefits denial by letter dated September 13, 2002. He informed defendants that he would be undergoing back surgery on September 30, 2002, as recommended by his orthopedist Dr. Kabaish, and enclosed a medical release permitting defendants to obtain all medical records associated with the surgery.[1]

---

1. As stated in Liberty Life's November 25, 2002 letter to DiCamillo denying his request for reconsideration, he was not considered to be in "active employment" on the date of his surgery. Liberty Life based its decision on the evidence in DiCamillo's file which supported that he "would not have been precluded from performing the material and substantial duties of ... [his] occupation as a Senior Tax Manager" prior to the operation. DiCamillo has not challenged Liberty Life's decision in this regard.

Defendants received the letter on September 18, 2002, and commenced a review of DiCamillo's appeal in October 2002. Liberty Life conducted a roundtable analysis with Dr. Brown, an internal physician at Liberty, who reviewed the claim without first obtaining DiCamillo's medical records from his September 30, 2002, surgery. After obtaining plaintiff's surgical records, Liberty Life then had Dr. Richard Corzatt, an orthopedic consultant, review DiCamillo's claim. On November 11, 2002, Dr. Corzatt prepared a memorandum concurring with Dr. Kanner's findings that DiCamillo was not disabled and could continue to perform his job with the accommodations that Dr. Kanner recommended. Dr. Corzatt did note, however, that DiCamillo's surgery rendered him completely disabled and he would not reach maximum medical improvement for twelve to eighteen months. (Plaintiff's Oppos. to Mot. to Dismiss at p. 10). Nevertheless, Liberty Life denied DiCamillo's appeal on November 25, 2002, citing extensively to the IME and Dr. Corzatt's report.

Plaintiff brought suit to challenge defendants' denial of benefits, alleging that defendants did not provide him a full and fair review because their assessment did not consider relevant medical evidence, was not made in accordance with the benefit plan, and failed to follow certain procedural requirements.

## II.

■ Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. Liberty Life and Marriott argue that the complaint does not indicate the specific provision of ERISA under which DiCamillo is suing, nor does it state with particularity which provisions defendants have allegedly violated or how they have violated ERISA. Defendants claim that this lack of specificity has prejudiced them by not giving them fair notice of the nature of DiCamillo's claims and the grounds upon which he relies for those claims.

The Federal Rules of Civil Procedure do not require a plaintiff to describe in detail the facts upon which his claim is based. They require only that a complaint include a "short and plain" statement of the claim "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Comet Enterprise Ltd. v. Air–A–Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). This simple "notice-pleading" approach is supplemented by the liberal opportunity for discovery and other pretrial measures established by the Rules to develop the basis of the claims raised and to identify with precision the disputed facts and issues involved. *Conley*, 355 U.S. at 46, 78 S.Ct. at 103.

The Federal Rules reject the view that pleading is a game of skill in which one mistake by an attorney may be determinative, but rather adopt the theory that pleading serves to facilitate a decision on the merits. *Id.* In light of this principle, the Supreme Court has cautioned that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102.

The court must consider the motion to dismiss for failure to state a cause of action in the light most favorable to the claimant. *Revene v. Charles County Commr's*, 882 F.2d 870, 872 (4th Cir.1989). With that in mind, the court finds that DiCamillo's complaint sets forth a plain statement of his claim for disability benefits retroactive to July 12, 2001. The complaint outlines DiCamillo's disability and the procedural history of his benefits claim with Liberty Life. (Compl. at ¶ 8–12) The

complaint specifically states that DiCamillo brings his claim under ERISA for defendants' wrongful denial of benefits contrary to the provisions of the welfare benefit plan of which DiCamillo was a participant. (Compl. at ¶ 1,4). DiCamillo clearly alleges that Liberty Life's decision did not apply the correct standard for benefits determinations and did not provide him a full and fair review because defendants failed to give sufficient consideration to certain medical evidence and failed to follow disclosure procedures in their decision-making process. (Compl. at ¶ 13–16). While the plaintiff need not set forth in the complaint all the facts relevant to his claim, certainly DiCamillo has sufficiently alleged the factual and legal foundation of his claim to dispel any "reasonable doubt that plaintiff can prove no set of·facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. DiCamillo has described with sufficient particularity the nature and circumstances of his claim for benefits and the applicable law under which it arises to give defendants fair notice of its substance and the grounds upon which it rests. Accordingly, the motion to dismiss for failure to state a claim will be denied.

## III.

### A.

◼ Defendants move, in the alternative, for summary judgment. Summary judgment shall be granted if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R.Civ. P. 56(c). It is well-settled that a court reviewing a denial of benefits under ERISA is to apply a *de novo* standard of review unless the benefit plan grants discretionary authority

to the administrator or fiduciary to determine benefits eligibility or interpret the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Ellis v. Metropolitan Life Insurance Co.,* 126 F.3d 228, 232 (4th Cir.1997). If the plan confers such discretionary authority, a court may only review denial decisions for abuse of discretion. *Bruch,* 489 U.S. at 111, 109 S.Ct. at 954. Under this deferential standard, the administrator or fiduciary's determination will not be overturned if it is reasonable, even if the court would have concluded differently. *Ellis,* 126 F.3d at 232; *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997). A decision must be deemed reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan,* 105 F.3d at 161 (quoting *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir.1995)).

◼ In the instant case, Section 7 of the Plan explicitly states: "Liberty shall possess the authority, in its sole and absolute final discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." (Colello–McGee Aff., Ex. A at LL 26).[2] Thus, an abuse of discretion standard applies.

◼ As defendants acknowledge, however, a "modified" abuse of discretion standard applies because of the potential conflict of interest arising from Liberty Life's dual role as decision-maker and insurer. *See Laser v. Provident Life & Accident Ins. Co.,* 211 F.Supp.2d 645, 649 (D.Md.2002); *Bernstein,* 70 F.3d at 787–

---

**2.** Although plaintiff's complaint alleges that the Plan did not expressly confer discretionary authority to either the administrator or fiduciary (Compl.¶ 17), this grant of authority

clearly appears in the Summary Plan Description that plaintiff has attached as Exhibit 1 to his Opposition to Defendant's Motion to Dismiss.

788; *Bedrick v. Travelers Ins. Co.,* 93 F.3d 149, 152 (4th Cir.1996). Under this standard, although a reviewing court will accord some deference to the administrator's discretionary decision, "this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80, 87 (4th Cir.1993). A court must review the merits of the administrator's decision to determine whether it is consistent with an exercise of discretion by an administrator operating without any conflicts of interest. *Bedrick,* 93 F.3d at 152 (citing *Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995)). Furthermore, in considering the conflict of interest as a factor in the reasonableness inquiry, the court is to determine whether the administrator abused its discretion based on a "sliding-scale" review, which essentially focuses on whether plaintiff received a full and fair review. *Willis v. Baxter Intern., Inc.,* 175 F.Supp.2d 819, 831 (W.D.N.C. 2001). Under this "sliding-scale" analysis, "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Ellis,* 126 F.3d at 233.

### B.

#### (1)

■ DiCamillo's claim did receive a full and fair review. Liberty Life collected medical reports from his health care providers and commissioned an IME of DiCamillo. Liberty Life also conducted non-medical video surveillance to investigate DiCamillo's claims of disability. Before making their decision to deny plaintiff benefits, defendants sent the results of the IME and a copy of the surveillance videotape to Dr. Shin, DiCamillo's primary physician of record, for review and comment. In their notification of benefits denial sent to DiCamillo on July 30, 2002, Liberty Life informed him of his right to appeal and to supplement his claim with any additional supporting medical documentation. Upon request, that summer Liberty Life sent DiCamillo a copy of his claim file, including the IME report and the surveillance videotapes upon which defendants based their denial. Finally, in their review of DiCamillo's appeal, defendants had the claim and additional medical records received from Dr. Kabaish independently reviewed by an outside orthopedic consultant in addition to their own internal physician.[3]

Liberty Life's extensive investigation and efforts to obtain independent evaluations of DiCamillo's condition resulted in a deliberate, principled reasoning process that produced a decision supported by substantial evidence. Liberty Life based its denial on the IME, which was never disputed by DiCamillo's primary physician, and on the surveillance video footage of DiCamillo performing activities such as yardwork and grilling, activities which he expressly stated in a Daily Activities Questionnaire that his disability restricted him from doing.

**3.** This court has noted the significance of independent medical examinations and independent reviews in cases in which the plan administrator is acting under a conflict of interest. *Laser v. Provident Life & Accident Ins. Co.,* 211 F.Supp.2d 645, 650 (D.Md. 2002). In concluding that the plan administrator abused its discretion, the court in *Laser* found it particularly telling of the administrator's conflict of interest that the administrator did not request an independent examination of the claimant nor conduct an independent review of his medical records despite the fact that the plan allowed the administrator to do so.

Even considering Liberty Life's potential conflict of interest as administrator and insurer, its decision to deny benefits cannot be deemed unreasonable since Liberty Life relied heavily upon the evaluations of independent physicians, who were presumably free of defendant's conflict of interest. The video surveillance upon which defendant relied also presented objective evidence of DiCamillo's ability to perform a variety of physical tasks, in direct contradiction to his statements to Liberty Life regarding the limitations of his condition.

■ The fact that Liberty Life rejected the opinion of DiCamillo's treating physicians and chose to base its decision on the evaluation of independent doctors and its own internal physician is not sufficient to show an abuse of discretion. Plaintiff argues that defendants' denial of benefits was determined arbitrarily because Liberty Life made its decision without the input of any of DiCamillo's treating physicians and failed to consider medical records from his physicians pertaining to treatment plaintiff received in summer 2002. ERISA does not, however, require plan administrators to accord special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).[4] In *Nord,* the Supreme Court rejected the application of the "treating physician rule" used in Social Security Disability Benefits determinations, instead upholding the Secretary of Labor's position that ERISA plan administrators should be given the greatest flexibility possible in determining benefit claims and should not be required to grant special weight to the assessment of a claimant's treating physicians. *Id.* at 1971–72. The Court held that while plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians...courts may not impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."*Id.* at 1972.

Furthermore, although Dr. Shin's report on February 14, 2002, noted that DiCamillo was temporarily disabled, his April 4, 2002, report indicated that DiCamillo had improved with physical therapy and that his symptoms were not severe enough at that time to justify surgery. With the exception of a report from his physical therapist, no further medical records from DiCamillo's treating physicians suggest that DiCamillo was totally disabled and unable to perform the duties of his job. Plaintiff did not submit any additional medical documentation with his appeal letter. The medical records Liberty Life obtained from Dr. Kabaish regarding DiCamillo's medical care and surgery in August and September, 2002, did not address whether DiCamillo's condition would prevent him from engaging in the sedentary to light activities required by his occupation.

(2)

■ Plaintiff further argues that he did not receive a full and fair review because defendants failed to evaluate his

4. The facts of *Nord* are similar to the instant case. Nord was an employee of Black & Decker who suffered from a degenerative disc disease and chronic back pain that rendered him unable to work. Black & Decker was the administrator of an employee welfare benefit plan but had delegated authority to Metropolitan Life Insurance Company (MetLife) to make initial recommendations on benefit claims. Nord submitted documentation from his physicians attesting to his condition, but MetLife denied his claim for benefits. Black & Decker then had Nord undergo an independent examination by a neurologist who concluded that Nord could perform sedentary work with the aid of pain medication. Consequently, MetLife made a final recommendation to deny Nord's claim.

ability to perform the intellectual functions of his job given the mental disorientation, confusion, and headaches he suffered as side-effects from his medication. Under the abuse of discretion standard, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir.1994). Although DiCamillo's medical records and Dr. Kanner's evaluation noted plaintiff's medications, DiCamillo did not report any cognitive side-effects from the medications to Dr. Kanner, nor did any of his physicians' reports discuss such cognitive difficulties. (Def.'s Reply Mem. in Support of Mot. to Dismiss at p. 12). While a Liberty Life nurse assigned to DiCamillo's claim did note the possibility of cognitive deficits from medication (Mudrick Report, Feb. 4, 2002), DiCamillo never raised the side-effects as a significant part of his claim. The focus of his benefits claim always remained on the back problems he suffered. Thus, Liberty Life did not abuse its discretion in failing to give considerable weight to the cognitive difficulties DiCamillo now asserts contributed to his disabling condition.

## IV.

### A.

■ Much of DiCamillo's complaint against defendants focuses on procedural errors he alleges that Liberty Life committed in its benefits denial and appeals process. Many of the procedural errors he asserts, such as rendering an appeal decision after the forty-five day appeals

period, are all violations of the Department of Labor's 2002 ERISA regulations, 29 C.F.R. § 2560.503–1 (2001), governing claims for disability benefits. The 2002 regulations explicitly provide, however, that they do not apply to claims filed before January 1, 2002. 29 CFR 2560.503–1(*o*) (2001) Liberty Life contends, and the court agrees, that DiCamillo's claim is not governed by the 2002 regulations because it was initially filed on November 7, 2001. *See Wade v. Life Ins. Co. of North America*, 271 F.Supp.2d 307 (D.Me.2003) (declining to apply the 2002 regulations and noting that plaintiff's case is controlled by the regulations in effect when she originally filed her claim in 1997); *Wertheim v. Hartford Life Ins. Co.*, 268 F.Supp.2d 643, 659 (E.D.Va.2003) (applying ERISA regulations in effect at the time plaintiff's claim was initially filed). Although DiCamillo appealed Liberty Life's denial of benefits in his September 13, 2002 letter to the defendant, his letter constituted merely an appeal from the adverse decision to deny benefits on his original claim and was not an independent claim for benefits.[5]

### B.

■ DiCamillo argues that even under the regulations in place prior to 2002, the defendants committed procedural error because Liberty Life issued its decision on his appeal sixty-eight days after his appeal was received. The pre–2002 regulations require a decision to be rendered within sixty days of a request for appeal but provide that a decision may be issued up to 120 days after a request if there are spe-

---

5. The 2002 regulations define a "claim for benefits" to which the regulations apply as "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 CFR 2560.503–1(e) (2001). DiCamillo's September 13, 2002, letter did not follow the plan's procedure for filing benefit claims but

was instead an appeal from Liberty Life's adverse decision to deny benefits. Therefore, it cannot properly be considered a claim for benefits despite plaintiff's characterization of the letter as a "request for continuing benefits." (Plain.'s Surreply Mem. in Opposition to Def.'s Mot. to Dismiss, at 4).

cial circumstances requiring a delay. 29 C.F.R. § 2560.503–1(h) (2000). If special circumstances arise, written notice of the extension of time for review must be sent to the claimant before the extension period begins.

▮ Liberty Life sent DiCamillo a letter on November 4, 2002, forty-seven days after his appeal letter was received, notifying him of their request for his medical records from Dr. Kabaish and acknowledging that this request may cause a delay in the review process. Although the letter did not explicitly invoke the sixty-day extension period, it did recognize that there might be a delay in their final decision. This effort to advise plaintiff of a possible delay substantially complied with the notification requirement. It has been recognized by this and other circuits that substantial compliance with ERISA regulations is sufficient, despite some procedural error, so long as a full and fair review is given. *See Ellis,* 126 F.3d at 235 ("[S]ubstantial compliance with the spirit of the regulation will suffice, for 'not all procedural defects will invalidate a plan administrator's decision'") (quoting *Brogan,* 105 F.3d at 165); *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 693–94 (7th Cir.1992).[6] However, Liberty Life's final decision was rendered only eight days after the expiration of the initial sixty-day appeal period. This minor delay did not prejudice DiCamillo and substantially complied with the normal time frame for appeals.

DiCamillo further argues that this procedural error should subject Liberty Life's decision to *de novo* review because Liberty Life forfeited the privilege to use its discretion when it failed to decide the claim in a timely manner. Plaintiff relies on cases in which claims were "deemed denied" because the plan administrators failed to act on the claims within the requisite time period.[7] *Jebian v. Hewlett–Packard Co.,* 310 F.3d 1173 (9th Cir.2002); *Gritzer v. CBS, Inc.,* 275 F.3d 291 (3rd Cir.2002). In *Jebian,* the court reasoned that "deemed denials" are not exercises of discretion since such claims are denied by virtue of time lapsing, and therefore they do not merit deference under the abuse of discretion standard. *See Gritzer,* 275 F.3d at 295–96 (plan administrator exercised no discretion where it made no effort to analyze or respond to a claim for benefits: "[i]n these circumstances, there simply is no analysis or 'reasoning' to which the Court may defer under the arbitrary and capricious standard").

▮ However, applying a *de novo* standard of review where deference is generally warranted solely because of a procedural error is an extreme measure that is inconsistent with the settled law of ERISA. *Wertheim,* 268 F.Supp.2d at 664. Mere procedural irregularity is not sufficient to deny deferential review. *Id. See also McGarrah v. Hartford Life Ins. Co.,* 234 F.3d 1026, 1031 (8th Cir.2000). Furthermore, in the instant case, the defendant did exercise its discretion and performed a full review of the appeal before denying the claim just eight days short of the appeal period. Thus, this is not a case

---

**6.** Plaintiff also argues that Liberty Life failed to follow the regulations by not providing him with a copy of the governing plan. In *Wade,* the court ruled that the defendant life insurance company substantially complied with the regulations, and therefore survived review, even though it failed to provide the plaintiff with a claims manual. 271 F.Supp.2d 307, 322–24.

**7.** Plaintiff relies on cases in which the plan administrator delayed making a decision for lengthy periods of time in contrast with the eight-day delay in this case. *See Jebian,* 310 F.3d 1173 (delay of almost one year after appeal was requested); *Gritzer,* 275 F.3d 291 (five month delay).

where the claim may be "deemed denied" because the administrator failed to act on the claim.

## V.

■ DiCamillo next contends that Liberty Life may not deny that he is disabled because its ultimate conclusion that he could return to work was conditioned on the provision of appropriate accommodations in the workplace, including permission to take fifteen-minute breaks every two hours and providing a chair with good lumbar support. Plaintiff asserts that these accommodations do not fall within the Plan's consideration of disability and that without them, he would be unable to perform the material duties of his job, as required by the definition of disability in the Plan. However, the policy explicitly grants Liberty Life the discretion to interpret the terms of the Plan and stipulates that its interpretation is conclusive and binding. In light of this discretion, the court may only overturn Liberty Life's interpretation of the term "disability" within the context of the plan and its decision as to DiCamillo's eligibility for benefits if they are unreasonable or unsupported by substantial evidence. *See Bruch,* 489 U.S. at 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (holding that trustee's interpretation of plan terms "will not be disturbed if reasonable").

I do not find unreasonable Liberty Life's determination that DiCamillo could perform the material and substantial duties of his sedentary occupation as a tax accountant if given periodic breaks.[8] A short break after two hours of sitting is not unreasonable, regardless of whether one has a disability, but especially in light of

DiCamillo's serious back condition. It was not unreasonable for Liberty Life to conclude that being disabled requires more than a few fifteen-minute breaks over the course of the work day and a chair with good back support. Such accommodations do not change the conclusion that DiCamillo had the ability to physically and mentally perform his job as a tax accountant.

## VI.

■ Finally, DiCamillo argues that summary judgment is not warranted because he has not been given the opportunity to conduct discovery on a number of issues. In light of the deferential standard of review that I am to apply in considering this appeal, discovery would be entirely unnecessary on the question of the merits of Liberty Life's decision since my review of the administrator's decision should be based on the record before the administrator. *See Sheppard and Enoch Pratt Hosp.,* 32 F.3d at 125. Indeed, DiCamillo does not seek such discovery. Rather, he seeks to take discovery on extraneous issues, such as whether other similarly situated claimants were treated differently than was he in the claims procedure, and the amount of monetary payments that were made to defendants' medical consultants both in this case and in other cases in which they have been retained by Liberty Life.

Although a court should be reluctant, for reasons of delay and costs, to permit discovery in ERISA cases, *see Abromitis v. Continental Casualty Co.,* 261 F.Supp.2d 388, 391 (W.D.N.C.2003), I am not prepared to say that such discovery should

---

8. In *Nord,* the defendant insurance company partly based its decision to deny benefits on the independent examining doctor's conclusion that the plaintiff, who similarly suffered a degenerative disc disease, could "perform sedentary work with some walking interruption in between." Although the plaintiff did not challenge his benefits denial on this ground, the Supreme Court upheld the administrator's decision. —— U.S. ——, ——, 123 S.Ct. 1965, 1968, 155 L.Ed.2d 1034.

never be permitted. However, in order to obtain such discovery a plaintiff must make credible allegations that he was treated unfairly vis-a-vis other claimants or that the medical consultants are so beholden to a defendant that they have lost their professional independence. Here, plaintiff has not even alleged that other claimants were treated differently than he. Likewise, there is nothing in the reports of Liberty Life's medical consultants or any other proffered evidence that would suggest that they are so biased that their views should not be considered.

For all of these reasons defendants are entitled to summary judgment. A separate order granting their motion is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this 23rd day of October 2003

ORDERED that

1. Defendants' motion to dismiss or for summary judgment is treated as a motion for summary judgment and is granted; and

2. Judgment is entered in favor of defendants against plaintiff.