**Cecilia NICHOLS, Plaintiff,**

v.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

No. 02 Civ.8583(VM).

United States District Court, S.D. New York.

Feb. 27, 2004.

Patrick F. Foley, McCormick Dunne & Foley, Larchmont, NY, for plaintiff.

Jill Anne LaZare, Julie M. Vales, Cuyler Burk, LLP, for defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Cecilia Nichols ("Nichols") brings this action for wrongful termination of long-term disability benefits against the Prudential Insurance Company of America ("Prudential"), the administrator of her former employer's long term disability employee benefits plan, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Nichols has moved for judgment on the administrative record, and Prudential has moved for dismissal without prejudice and, in the alternative, summary judgment on Nichols' claims. Before reaching the merits of the dispute, the Court must determine whether, at the time she filed this litigation, Nichols had exhausted her administrative remedies. At issue is 29 C.F.R. § 2560.503–1(h) (1999), which sets forth deadlines by which a benefits plan administrator must decide a claimant's appeal of a denial of benefits. The Court has determined that while Prudential technically did not comply with the letter of the regulation, Nichols ignored its spirit, and therefore the Court dismisses Nichols's complaint without prejudice to allow Prudential to complete its review of her claim.

### I. BACKGROUND [1]

Nichols worked as an internal auditor for Sumitomo Trust and Banking Company ("Sumitomo") from June 1997 to November 1999. Through her employment with Sumitomo, Nichols participated in the company's Long Term Disability Plan (the "LTD Plan"), an employee benefit plan that provides disability benefits to an employee who becomes totally disabled for more than 180 days. Prudential serves as the administrator of the LTD Plan.

In April 2000 Nichols submitted a claim for long term disability benefits. Nichols identified six medical conditions that had been diagnosed by her treating physician as causing or contributing to her inability to work: chronic fatigue syndrome, fibromyalgia, dermatomyositis, Epstein–Barr virus infection, degenerative disc disease with radiculopathy, and lumbar disc herniation. Prudential approved Nichols's claim and began paying her long-term disability benefits in April 2000.

In December 2001, Prudential reviewed Nichols's claim, determined that she was no longer totally disabled, and informed Nichols that it would stop paying her disability benefits in April 2002. Prudential apparently reached this decision by asking a consulting physician to review Nichols's medical records from her five treating

---

1. Although the parties produced extensive submissions on Nichols's medical conditions and directed the bulk of their briefs to whether Nichols is disabled, the Court here only recounts the facts and proceedings relevant to whether Nichols exhausted her administrative remedies.

physicians. Prudential's consulting physician did not examine Nichols.

On April 11, 2002, Nichols appealed the decision terminating her benefits to Prudential's Appeals Review Unit. On June 17, 2002, Prudential sent a letter to Nichols stating that it was reviewing her appeal and would contact her within 30 days to update her of the status of her appeal if a decision had not yet been reached. By a letter dated July 25, 2002 Prudential informed Nichols's counsel, Patrick Foley ("Foley"), that it was delaying making a decision on Nichols's appeal until it received additional medical records from Nichols's treating physicians, which it had requested. On November 4, 2002, Prudential informed Foley that it was still reviewing Nichols's claim and was awaiting the results of Nichols's independent medical examination ("IME"), which was scheduled for November 15, 2002. Foley replied by a letter dated November 7, 2002 that because Prudential had failed to resolve Nichols's appeal within the time allotted by the Code of Federal Regulations, Nichols had filed this lawsuit on October 25, 2002 and therefore Nichols was canceling her IME and all other claims proceedings. Prudential now moves for a dismissal of Nichols's claims without prejudice for failure to exhaust her administrative remedies.

## II. *DISCUSSION*

■ It is well settled that an ERISA plaintiff must pursue all administrative avenues available under her plan before commencing litigation. *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir.2002). Among other purposes, the exhaustion requirement serves to:

(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and

(3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

*Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993) (quoting *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir.1985)).

ERISA requires all employee benefits plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. When Prudential terminated Nichols's benefits, it informed her of her right to appeal the decision. Nichols was thus obligated to pursue her appeal through Prudential before bringing this litigation. But, as this case demonstrates, even a seemingly straightforward requirement can have nuances and shades of meaning.

The Secretary of Labor has established time limits by which an appeal of a denial of benefits must be decided. Those regulations provide:

(1) A decision by an appropriate named fiduciary shall be made promptly, and shall not *ordinarily* be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review. (2) If such an extension of time of review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension.

.        .        .        .        .

(4) The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section. If the decision on review is not furnished within such time, the claim shall be deemed denied on review.

29 C.F.R. § 2560.503–1(h) (1999) (emphasis added).[2]

Nichols filed her appeal with Prudential's Appeals Review Unit on April 11, 2002. For 67 days, Prudential, true to its logo, remained rock-silent. Seven days after the expiration of the 60–day deadline, Prudential first contacted Nichols to state that it had received her appeal and was "currently performing a thorough evaluation of the information currently within [Nichols's] file." (Letter dated June 17, 2002 from Appeals Review Unit to Nichols, attached as Ex. 7 to Affidavit of Julie M. Vales in Support of Defendant's Motion for Summary Judgment dated November 21, 2003 (Vales Aff.).) Prudential did not expressly request additional time to review Nichols's appeal, but stated that it would "contact [Nichols] within 30 days with the status of our evaluation if a decision has not yet been rendered." (*Id.*) Prudential wrote to Foley on July 25, 2002 that it "cannot complete our evaluation of Ms. Nichols's appeal at this time" but would "continue our evaluation upon receipt" of additional medical records that it had requested from some of Nichols's physicians. (Letter dated July 25, 2002 from Christopher Cawley to Foley, attached as Ex. 8 to Vales Aff.)

On October 25, 2002, having received no decision from Prudential 197 days after she filed appeal, Nichols filed this lawsuit. The Appeals Review Unit was apparently unaware that Nichols had initiated litigation, because on November 4, 2002 it sent

Foley a letter confirming Nichols's appointment for an IME. Foley replied that he had instructed Nichols to cancel her appointment in light of the pending litigation.

■ Prudential argues that Nichols failed to exhaust her administrative remedies because she prematurely terminated Prudential's review of her appeal. Prudential asserts that it substantially complied with the time limits set forth in the regulations and was reviewing Nichols's appeal in good faith when Nichols abruptly ended its efforts and brought litigation against it. Nichols responds that the language of 29 C.F.R. § 2560.503–1(h) is clear. Nichols argues that Prudential neither rendered a decision nor requested additional time to do so within the 60–day deadline, and consequently Nichols has exhausted her administrative remedies and may file suit.

The Court therefore must determine whether a finding of a technical violation of the regulation necessarily resolves this dispute, or instead whether under the particular facts presented here, the Court can reject a rigid application of a regulation and consider the deadline's intended purposes. The Supreme Court has stated that the "deemed denied" provision in 29 C.F.R. § 2560.503–1(h)(4) enables a claimant to proceed to court for a determination of his appeal. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Other courts have similarly indicated that the expiration of the 60–day deadline (or 120 days if an extension was requested) without a decision allows a claimant to file suit, although none of these courts addressed exhaustion. *See Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income*

---

**2.** This regulation has since been amended and the current version applies to all claims filed under a benefits plan on or after January 1, 2002, *see* 29 C.F.R. § 2560.503–1(*o*) (2002), but the applicable version here is that which was in effect when Nichols filed her claim in 1999.

*Protection Plan,* 349 F.3d 1098, 1103–05 (9th Cir.2003); *Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 492 (D.C.Cir.1998).

But while courts generally have recognized that the "deemed denied" provision of the regulations enables claimants to initiate litigation upon the expiration of the deadline, some have also expressed a reluctance to penalize a plan administrator who has demonstrated a good faith effort to resolve an appeal but has technically failed to do so within the regulations.[3]

In *Gilbertson,* the Tenth Circuit adopted a "substantial compliance" approach to 29 C.F.R. § 2560.503–1(h). 328 F.3d at 634. The Circuit Court stated that "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review" of the administrator's decision in federal court. *Id.* at 635.

Several courts in other districts have addressed fact patterns similar to the case at bar, although not necessarily in the exhaustion context, and have applied a substantial compliance standard to the administrator's actions.

In *DiCamillo v. Liberty Life Assurance Co.,* 287 F.Supp.2d 616, 625–27 (D.Md. 2003), the court ruled that a plan administrator substantially complied with the 60-day deadline when the administrator informed the claimant within the deadline that it was reviewing his appeal but ultimately issued a decision 68 days after the claimant filed his appeal. In *Parness v. Metropolitan Life Insurance Co.,* 291 F.Supp.2d 1347, 1357 (S.D.Fla.2003), as in the case at bar, the administrator neither

issued a decision nor made any contact with the claimant within the deadline. One week after the deadline expired, the claimant requested an update on her appeal, and the administrator replied that it was reviewing her claims. *See id.* at 1351. Less than one month after the expiration of the deadline, the claimant informed the administrator that because it had not rendered a decision on her appeal within the deadline, she was initiating litigation. *See id.* The district court refused to penalize the administrator for its technical violation of the deadline in light of evidence that the administrator was reviewing the appeal and was informing the claimant of the status of its review. *See id.* at 1357; *see also, Campanella v. Mason Tenders' Dist. Council Pension Plan,* 299 F.Supp.2d 274, 289–90 (S.D.N.Y.2004).

In *Zalka v. Unum Life Insurance Co. of America,* 65 F.Supp.2d 1369 (S.D.Fla. 1998), the court was presented with a failure to exhaust argument similar to the case at bar. There, the administrator notified the claimant more than four months after she filed her appeal that it did not have sufficient information to render a decision, and requested that the claimant submit to an IME. *See id.* at 1370. The claimant refused to submit to the IME and instead filed suit. *See id.* at 1371. The court ruled that "[b]y refusing to submit to the IME and immediately filing suit ... Plaintiff precluded Defendant from completing its administrative review of her claim. Plaintiff has thus not exhausted her administrative remedies." *Id.*

Finally, in *Nave v. Fortis Benefits Ins. Co.,* No. C.A. 98–3960, 1999 WL 238949 (E.D.Pa. Mar.30, 1999), as in the present

---

3. This penalty, when imposed, typically takes the form of a court's refusal to apply a deferential standard of review to an administrator's decision denying a claimant benefits when that decision is merely a deemed denial based on the expiration of the 60/120-day deadline rather than a reasoned evaluation of the claimant's appeal and a written decision. *See Jebian,* 349 F.3d at 1103–05; *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625 (10th Cir. 2003).

case, the court was presented with a motion to dismiss a benefits claimant's lawsuit for failure to exhaust administrative remedies. The administrator mailed the claimant two letters within the 60–day deadline stating that it had received the appeal and would render a decision within the deadline. Ten days after the deadline expired, the claimant, having received no decision from the administrator, filed suit. The court reasoned that although the administrator technically failed to comply with the deadline, the claimant denied the administrator the opportunity to render a decision on an appeal that the claimant knew was actively being reviewed. The court therefore dismissed the claimant's complaint without prejudice for failure to exhaust his administrative remedies, but ordered the administrator to render a decision on the claimant's appeal within 14 days of the date of the court's order.

█ The 60–day deadline promulgated by the Secretary of Labor serves multiple functions. It promotes the speedy resolution of a claimant's appeal. It encourages meaningful dialogue between the administrator and the claimant. *See Gilbertson,* 328 F.3d at 635–36. By guaranteeing judicial deference to decisions an administrator renders within the deadline, the regulation increases the likelihood that the party charged with interpreting a benefits plan, rather than a court, will carefully interpret the plan and produce consistent results under the plan. For the same reason, a claimant is less likely to bring a frivolous lawsuit to federal court if he knows that the administrator's timely decision will be accorded significant deference.

The Court also takes note of the real-world demands on a large benefits plan administrator such as Prudential. A major plan administrator is likely to handle a very large volume of benefits claims and appeals, many of which the administrator may regard as meritless. It is not unexpected that in the interest of economy and efficiency a large administrator would adopt a practice of not conducting a thorough review of every appeal it receives and routinely issuing a detailed written decision within the relatively short 60–day deadline. The administrator may be able to distinguish readily between claims and appeals that are unfounded and those that raise substantial issues and are thus worthy of more careful consideration and a written decision. It is perhaps this practicality that is reflected in the reference in 29 C.F.R. § 2560.503(1)(h) to the term "ordinarily" in describing the 60–day time limit within which the plan fiduciary shall decide claims. The administrator may be content to allow the deadline to expire on appeals it considers meritless without devoting its resources to an investigation and written decision. But when the administrator identifies appeals that may warrant additional scrutiny and begins in good faith to investigate and consider that claim within a period manifesting substantial compliance with the regulatory limits and notifies the claimant that it is doing so, that process should be allowed to run its course for a reasonable time, as long as the administrator continues to exhibit good faith. Conceivably, that additional review may provide the administrator the needed opportunity to resolve the claim to the parties' satisfaction, obviating litigation. An opposite result would engender litigation and put the parties to costs and delays in resolution of disputes in some cases that possibly may have been amenable to administrative adjudication.

For all of these reasons, the Court is persuaded that it should not unduly penalize Prudential for its technical noncompliance with the deadline. Prudential's silence towards Nichols for the duration of the 60–day appeal deadline is a concern. There is no reason Prudential could not have informed Nichols of the status of her

appeal within the deadline. But the Court believes that Prudential's unsolicited communications to Nichols beginning just one week after the expiration of the 60–day deadline evinced a good faith effort to resolve Nichols's appeal and constituted substantial compliance with the regulations. Nichols's conduct in proceeding to court after the expiration of the deadline, in the face of several communications from Prudential indicating that it was still actively reviewing her appeal, was technically justified but contradicts the spirit of the deadline.

Accordingly, the Court will grant Prudential's motion to dismiss without prejudice Nichols's claim. But because the Court desires to guarantee that Prudential will resolve Nichols's claim expeditiously, the Court will establish a new deadline by which Prudential must render a decision on Nichols's appeal. The Court recognizes that Prudential requested additional medical information from Nichols and sought to have Nichols submit to an IME. Therefore, the Court orders Prudential to issue a decision on Nichols's appeal within thirty (30) days of the date that Nichols complies with Prudential's requests for additional information and an IME. Should Prudential fail to do so, or should Prudential deny Nichols's claim on appeal, Nichols may return to this Court for further proceedings.

### III.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant the Prudential Insurance Company of America ("Prudential") for dismissal of the complaint of plaintiff Cecilia Nichols ("Nichols") is granted without prejudice, the motion of Prudential for summary judgment is denied, and Nichols's motion for judgment on the administrative record is denied; and it is further

**ORDERED** that Prudential shall render a decision on Nichols's appeal of the termination of her benefits within thirty (30) days of the date on which Nichols complies with Prudential's requests for medical records and an Independent Medical Examination.

**SO ORDERED.**