Cecilia NICHOLS, Plaintiff–Appellant,

v.

The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Defendant–Appellee.

Docket No. 04–1445–CV.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 17, 2004.

Decided: April 21, 2005.

Christopher P. Foley, (Patrick F. Foley, on the brief) McCormick, Dunne & Foley, New York, N.Y., for Plaintiff–Appellant.

Stephen D. Cuyler, (David A. Brooks, on the brief), Cuyler Burk, LLP, New York, N.Y., for Defendant–Appellee.

Mary Ellen Signorille, AARP Foundation Litigation, Melvin R. Radowitz, AARP, Washington, D.C., for amicus curiae AARP.

Before: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

POOLER, Circuit Judge.

Cecilia Nichols appeals from the February 27, 2004 decision and order of the United States District Court for the Southern District of New York (Victor Marrero, *J.*) dismissing without prejudice her claims of wrongful termination of disability benefits under the Employee Retirement Income Security Act of 1974, as amended and codified at 29 U.S.C. §§ 1001—1461 and scattered sections of 26 U.S.C. ("ERISA"). The district court held that while defendant-appellee The Prudential Insurance Company of America ("Pruden-

tial") did violate the deadlines for completing review of a denial of benefits set forth in 29 C.F.R. § 2560.503–1(h),[1] promulgated pursuant to ERISA, it made good faith efforts to complete this review that placed it in substantial compliance with the regulation. The district court therefore dismissed Nichols's claims for failure to exhaust administrative remedies, but ordered that Prudential complete its review and render a decision within thirty days of the date that Nichols complies with Prudential's requests for additional information and for an independent medical examination. On appeal, Nichols argues that the "substantial compliance" doctrine is inconsistent with the regulation, that Prudential did not technically or substantially comply with the regulation, and that in the absence of a decision by Prudential, the district court should have reviewed the denial of benefits de novo. Prudential argues that the district court's order was an interlocutory remand order over which this Court does not have appellate jurisdiction, that the "substantial compliance" doctrine is proper and consistent with the tolling scheme implemented by the current version of the regulation, and that any district court review of the denial of benefits should be under an arbitrary and capricious standard. We hold that the district court's dismissal without prejudice is a final decision over which this Court has appellate jurisdiction. We further hold that the plain language of 29 C.F.R. § 2560.503–1(h) precludes the judicial creation of a "substantial compliance" doctrine. We finally hold that the lack of discretion vested in the plan administrator, or alternatively, failure to exercise any such discretion, requires de novo review of the denial of benefits. We therefore va-

cate the district court's order and remand to the district court for de novo review of the merits of Nichols's claim.

## BACKGROUND

While the facts pertaining to the underlying merits of Nichols's claim are disputed, the facts concerning the course of communications between Nichols and Prudential at issue here are not. We review and summarize here only this undisputed factual background.

Cecilia Nichols participated in a group insurance plan (the "plan") offering short— and long-term disability coverage, underwritten and administered by Prudential. The plan offered long-term disability coverage, and limited coverage to twenty-four months for disabilities based in part on mental disorders.

In November 1999, Nichols submitted a claim based on several diagnosed medical conditions that resulted in pain, fatigue, weakness, nausea, dizziness, depression, and disorientation. As per the terms of the plan, Prudential paid short-term disability benefits until April 29, 2000, and then began paying long-term benefits. On December 12, 2001, Prudential notified Nichols by letter that her benefits would be suspended after April 29, 2002, because she was no longer totally disabled and her disability was based in part on a mental disorder. On December 18, 2001, Prudential called Nichols by telephone and informed her of the termination of benefits and the right to appeal, and told Nichols that she should forward medical evidence of continued disability if she did appeal. Nichols called Prudential on December 19, 2001, discussed the appeals process and

---

1. 29 C.F.R. § 2560.503–1 was significantly amended in 2000, Claims Procedure, 65 Fed. Reg. 70,246, 70,265–71 (Nov. 21, 2000), and slightly amended further in 2001, Claims Pro-

cedure, 66 Fed.Reg. 35,886, 35,888 (July 9, 2001). All references to the regulation in this opinion are to the 1999 version, unless otherwise specified.

the medical evidence necessary, and was informed that if she appealed, Prudential would assess the need for an independent medical evaluation ("IME") at that time.

Nichols filed a written appeal with Prudential by letter dated April 11, 2002 (day 0)[2]. No further correspondence was exchanged until June 17 (day 67), when Prudential acknowledged receipt of Nichols's letter, stated that Prudential was performing a review, and stated that Nichols would be contacted within 30 days with a decision or the status of the evaluation. On July 1 (day 81), Prudential requested by telephone that Nichols submit to an IME. A week later, on July 8 (day 88), Nichols informed Prudential by telephone that she refused any IME and would consult with an attorney. Nichols then sent a letter, through counsel, on July 11 (day 91), referring to Nichols's appeal as an ERISA matter and instructing Prudential not to delay or disturb resolution of the appeal. On July 25 (day 105), Prudential responded by letter, stating that it could not resolve Nichols's appeal until she submitted medical records of her continuing treatment. Nichols wrote a final letter on August 9 (day 120), rejecting Prudential's July 25 letter, and referring specifically to 29 C.F.R. § 2560.503–1(h) as requiring timely processing of Nichols's appeal.

On October 25, 2002 (day 197), Nichols filed the present suit. Nichols wrote to Prudential on November 7, 2002, notifying Prudential of the suit and stating that no further claims proceedings, such as an IME, were appropriate. Prudential responded by reminding Nichols to attend her scheduled IME by letter dated November 4, 2002. Prudential subsequently moved to dismiss without prejudice for failure to exhaust administrative remedies. *Nichols v. Prudential Ins. Co. of Am.,* 306 F.Supp.2d 418, 419 (S.D.N.Y.2004).

The district court held that "while Prudential technically did not comply with the letter of the regulation, Nichols ignored its spirit," and dismissed Nichols's complaint without prejudice "to allow Prudential to complete its review of her claim." *Id.* The district court observed that 29 C.F.R. § 2560.503–1(h) "ordinarily" set a 60–day deadline for appeals of a denial of benefits, which could be extended to 120 days for "special circumstances," provided a written notice to the claimant preceded such extension. *Nichols,* 306 F.Supp.2d at 420 (quoting 29 C.F.R. § 2560.503–1(h)). It then found that while Prudential had remained entirely silent for 67 days after the date of Nichols's April 11 appeal letter, Prudential subsequently exhibited good faith efforts to gather new evidence and resolve Nichols's appeal, efforts which Nichols resisted. *Id.* at 423—24. Relying on a Tenth Circuit case, *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625, 634—36 (10th Cir.2003), and several district court cases from other Circuits, the district court held that Prudential's actions placed it in "substantial compliance" with the regulatory deadlines. *Nichols,* 306 F.Supp.2d at 423—24. The district court therefore granted the motion to dismiss without prejudice and ordered that Prudential render a final decision within thirty days after Nichols complied with Prudential's requests for additional medical records and an IME. *Id.* at 424.

---

**2.** For convenience, relevant dates are parenthetically identified by the number of days since April 11, 2002. These identifications do not in themselves represent any legal conclusions, and do not incorporate any alterations to the counting method for weekends, holidays, equitable tolling, or other legal considerations. They are instead simple mathematical calculations included for convenience.

This appeal followed. Nichols argues that this Court should reject the substantial compliance doctrine; that in any case Prudential's actions do not constitute substantial compliance; and that on remand, the district court should conduct a de novo review of the administrative record. Prudential argues that the district court's order is an interlocutory order remanding to Prudential as the plan administrator, over which this Court has no appellate jurisdiction; that Prudential was in fact in technical compliance with the regulatory deadlines; and that this Court should adopt the substantial compliance doctrine and find Prudential substantially complied with the regulatory deadlines.

## DISCUSSION

### I. Appellate Jurisdiction

█ We first address the issue of our jurisdiction over this appeal. Prudential correctly notes that only final decisions of the district court are appealable as of right under 28 U.S.C. § 1291. "Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal quotation marks omitted).

Prudential argues that the district court's order at issue here is a remand to the ERISA plan administrator, and that our jurisdiction over such a remand is undecided by this Court. *See generally Zervos v. Verizon N.Y., Inc.,* 277 F.3d 635, 646 & n. 8 (2d Cir.2002) (citing *Crocco v. Xerox Corp.,* 137 F.3d 105, 108 (2d Cir. 1998)). Our sister courts of appeals have split on whether a remand to a plan administrator is a final decision within the meaning of 28 U.S.C. § 1291, with the Seventh and Ninth Circuits holding that such re-

mands are immediately appealable in certain circumstances, and the First, Sixth, and Eleventh Circuits holding that such remands are not final decisions. *Compare Hensley v. Northwest Permanente P.C. Ret. Plan & Trust,* 258 F.3d 986, 992—93 (9th Cir.2001) *and Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan,* 195 F.3d 975, 979—80 (7th Cir.1999), *with Bowers v. Sheet Metal Workers' Nat'l Pension Fund,* 365 F.3d 535, 536 (6th Cir. 2004), *Petralia v. AT & T Global Info. Solutions Co.,* 114 F.3d 352, 353–54 (1st Cir.1997), *and Shannon v. Jack Eckerd Corp.,* 55 F.3d 561, 563 (11th Cir.1995) (per curiam).

At this time, we need not decide with which circuits we agree. The district court's order under review here does not use the term "remand," and substantively differs from a remand order of the type considered in the above cases. Each of the above-cited cases involved a remand to the plan administrator for a new determination, and, where necessary, vacatur of the previous determination. *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust,* No. 96 Civ. 1166, 1999 WL 685886, at *7, 1999 U.S. Dist. LEXIS 13906, at *19 (D.Or. Aug. 12, 1999); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan,* 979 F.Supp. 726, 731 (N.D.Ill. 1997); *Bowers,* 365 F.3d at 536; *Petralia,* 114 F.3d at 354; *Shannon,* 55 F.3d at 562. Each of these cases found fault with the plan administrator's benefits determination, and returned the matter to the plan administrator to correct these faults. Thus, these cases contemplate that the primary responsibility for further action lay with the plan administrator, who must correct its previous determination. This principle is consistent with the general understanding of remand as requiring further action in the forum best suited for further proceedings. *See Druid Hills Civ-*

*ic Ass'n v. Federal Highway Admin.,* 833 F.2d 1545, 1549 (11th Cir.1987) ("[T]he purpose of a remand order is to continue litigation rather than terminate it. . . .").

The district court order at issue here is quite different. By its own terms, it is a dismissal without prejudice, not a vacatur and remand. Indeed, the primary thrust of the decision is that Prudential in fact made no error that now needs to be corrected, and that Nichols precluded a determination by bringing suit prematurely. *See Nichols,* 306 F.Supp.2d at 423—24. The decretal language of the district court's order mandates only two things: first, that the motion to dismiss is granted without prejudice and the alternative and cross motions are denied; and second, that Prudential must render a final decision within thirty days after Nichols submits additional medical records and undergoes an IME. *Id.* at 424. The order leaves the primary responsibility for further action in the hands of Nichols, who must take certain actions, which the district court characterizes as exhausting her administrative remedies, before coming back to court. This is entirely consistent with a dismissal without prejudice, which terminates litigation and the court's responsibilities, while leaving the door open for some new, future litigation. *See Rinieri v. News Syndicate Co.,* 385 F.2d 818, 821 (2d Cir.1967).

We therefore consider the district court's order to be a dismissal without prejudice, not a remand. It is well established that a dismissal without prejudice, absent some retention of jurisdiction such as an invitation to amend the complaint, terminates the action and is a final decision from which an appeal lies. *Wynder v. McMahon,* 360 F.3d 73, 76 (2d Cir.2004). The district court's decision does state that "Nichols may return to this Court for further proceedings," *Nichols,* 306 F.Supp.2d at 424, which could be interpreted as a retention of jurisdiction. However, as discussed above, the specific decretal language of the district court's order dismisses the claims without prejudice and imposes a new deadline on Prudential once Nichols submits to an IME. *Id.* The decision contemplates a return to the court only after Prudential has violated the new deadline or denied benefits. *Id.* The most consistent interpretation of the district court's statement is that it simply restates Nichols's legal right to resume her action in the same federal court once the plan administrator actually makes a decision, or once Prudential has violated a federal court order by failing to meet the new deadline. There is no need to read in any retention of jurisdiction into the district court's clearly stated decision.

We hold that the specific district court decision at issue here is a dismissal without prejudice, that it is a final decision, and that appeal lies as of right to this Court under 28 U.S.C. § 1291. Accordingly, we turn now to the substance of the appeal.

## II. The Regulatory Deadlines

There are two basic substantive questions in this appeal. The first, which we address in this section, concerns Prudential's compliance with the regulatory deadlines. If Prudential missed these deadlines, then Nichols's claim is deemed denied and her administrative remedies are therefore exhausted, removing any procedural obstacle to the present suit. Prudential argues both that it has complied technically with the deadlines, and that we should recognize a substantial compliance exception to the deadlines and hold that Prudential substantially complied with the deadlines. We first address the standard of review by which we review the district court's conclusions as to these issues, and then consider each argument in turn. The second question,

which is addressed in section III, concerns the standard of review that a district court should use in reviewing a claim that has been deemed denied after the failure of the plan administrator to meet the regulatory deadlines. Under ERISA, a district court reviews a plan administrator's discretionary decision under an arbitrary and capricious standard and all other administrator decisions de novo. The question of which standard of review the district court should apply turns on whether the plan instrument vests the plan administrator with discretion in the administrator's treatment of claims, and whether the administrator's action in missing the deadlines is a valid exercise of that discretion.

### A. Standard of Our Review of the District Court's Decision

■ We first address the standard by which we review the district court's judgment. This Court has never explicitly stated the standard of review for a district court's dismissal of an ERISA claim for failure to exhaust administrative remedies. It is similarly unclear whether such a motion is properly brought for failure to state a claim, lack of subject matter jurisdiction, or on some other procedural basis. *See Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 591–92 (2d Cir.1993) (affirming conversion of a motion to dismiss an ERISA claim for failure to state a claim on exhaustion grounds to a motion for summary judgment). However, while dismissals for failure to exhaust administrative remedies in cases governed by different statutes have been characterized in several ways, we have, in these other contexts, universally held that we review such dismissals de novo. *See J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 112 (2d Cir.2004) (reviewing a dismissal of an IDEA claim for lack of subject matter jurisdiction due to failure to exhaust);

*Carlyle Towers Condo. Ass'n, Inc. v. FDIC,* 170 F.3d 301, 305 (2d Cir.1999) (reviewing de novo a dismissal of a FIR-REA claim for lack of subject matter jurisdiction due to failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663, 666 (2d Cir.2004) (reviewing de novo a dismissal of a Section 1983 claim pursuant to judgment on the claims due to failure to exhaust as required by the PLRA). We see no reason that dismissals for failure to exhaust administrative remedies should be treated differently in the ERISA context, and we will therefore review the district court's decision de novo.

### B. Technical Compliance

■ The question of whether Nichols exhausted administrative remedies is in turn dependent on whether Prudential complied with the regulatory deadlines of 29 C.F.R. § 2560.503–1(h). This regulation requires that a plan administrator's decision reviewing a denial of benefits must ordinarily be made within 60 days of the request for such review, but may be made within 120 days for special circumstances. 29 C.F.R. § 2560.503–1(h)(1)(i). Notice of any such extension must be given in writing before the commencement of the extension. 29 C.F.R. § 2560.503–1(h)(2). If no decision is rendered by the deadline, the claim for benefits is deemed denied on review. 29 C.F.R. § 2560.503–1(h)(4). Thus, if Prudential failed to meet the deadlines, Nichols's administrative appeal is deemed denied, and her administrative remedies are therefore exhausted.

In the present case, Prudential first communicated with Nichols about her appeal 67 days after the date of her letter requesting the appeal. It first expressed the need for an IME on day 81, and stated that it could not proceed without the IME and further medical records on day 105. As of the commencement of the present

suit on day 197, Prudential had never rendered a formal decision on Nichols's claim.

Prudential argues on appeal, though it did not do so below, that despite these time frames, it complied with the letter of the regulation. It points out while the record reflects that Nichols's original request for review was dated April 11, there is no record evidence of when the letter was mailed or received, and that use of standard mailing delays and weekend extensions brings its day–67 letter within the 60–day deadline. We are not required to consider this argument, *see Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir.2004) (noting the prudential rule that we will not consider arguments raised for the first time on appeal), but it is in any case without merit. The regulation requires a decision on the appeal within 60 days, not just acknowledgment of the appeal. 29 C.F.R. § 2560.503–1(h)(1)(i). Even if we gave Prudential the benefit of the 60–day extension, its claim that it complied with the regulation would fail. No decision had been rendered as of day 197, and no overlooking of failed notice or addition of mailing time can place Prudential in technical compliance with the regulation.

### C. Substantial Compliance

█ The question, then, is whether Prudential's failure to comply with the letter of the regulatory deadlines may be excused by its good-faith efforts to resolve the appeal subsequent to the expiration of the deadline. We observe at the outset that the language of the regulation is not ambiguous. It states explicitly that failure to meet the 60–day deadline (or 120 days under "special circumstances" and after notice of such an extension) results in the claim being "deemed denied." 29 C.F.R. § 2560.503–1(h)(4). The Supreme Court has also explained this regulation as stating "that a claim may be treated as having

been denied after the 60– or 120–day period has elapsed," which "enables a claimant to bring a civil action to have the merits of his application determined." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). We have further explained that under *Russell*, "a plan's failure to award benefits within the period specified by the Secretary's regulations ... permits a claimant to consider her claim as having been denied so that she is free to seek judicial review of the denial." *Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223, 231 n. 5 (2d Cir.2002). Although *Russell* and *Dunnigan* do not squarely address exhaustion, they strongly suggest that a plan administrator's failure to adhere literally to the regulatory deadlines renders the claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay.

In contrast, the district court relied on a Tenth Circuit case, *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir.2003), and several federal district court cases from outside this Circuit. *Nichols*, 306 F.Supp.2d at 422–23. This reliance is misplaced. *Gilbertson* addressed the question of "whether a plan administrator with discretionary authority whose delay in deciding a claim results in its being 'deemed denied' is entitled to judicial deference." 328 F.3d at 631. It concluded that no deference should be accorded, but then inquired as to whether substantial compliance with the deadlines might permit an exception to this rule. *Id.* at 634. In doing so, it observed that substantial compliance would be a reason not to penalize a plan administrator by requiring de novo review. *Id.* at 635. *Gilbertson* then went on to limit substantial compliance to cases where there is an ongoing good-faith evidence-gathering process, begun before the

expiration of the applicable deadline, reasoning in part that "[t]he deadlines play a crucial role" and that they "empower the claimant to call a halt to the evidence-gathering process and insist on an up or down decision on the record as it stands." *Id.* at 636. *Gilbertson* thus assumes exactly the opposite proposition reached by the district court and urged by Prudential: that the expiration of the regulatory deadlines permits the claimant to immediately call an end to the administrative process. *Gilbertson*'s analysis of the substantial compliance doctrine addressed only to the standard of review to be used once such a suit was instituted, a limited use of the doctrine that we discuss further below. *See id.; see also Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1106–07 (9th Cir.2003).

Turning to the district court cases cited by the decision below and Prudential, we note that two of these cases, like *Gilbertson,* stand only for the proposition that a plan administrator who 1) substantially complied with the deadlines and 2) eventually exercised its discretion to deny benefits by the time of suit, should not be penalized by automatic reversal of the administrator's decision or withholding of judicial deference. *See DiCamillo v. Liberty Life Assurance Co.,* 287 F.Supp.2d 616, 625–27 (D.Md.2003); *Parness v. Metropolitan Life Ins. Co.,* 291 F.Supp.2d 1347, 1357 (S.D.Fla.2003). Such cases assume the plaintiff's access to the courts and support, rather than undermine, our holding today. Another case cited below and by Prudential, *Nave v. Fortis Benefits Insurance Co.,* found neither technical nor substantial compliance, and remanded to the plan administrator as an equitable solution to the dispute. No. C.A. 98–3960, 1999 WL 238949, at *4–*5 (E.D.Pa.1999). *Nave* therefore takes no position on whether substantial compliance affects access to

federal courts, and is thus inapposite. One case is genuinely contrary to our holding. *Zalka v. Unum Life Ins. Co. of Am.,* 65 F.Supp.2d 1369, 1370–71 (S.D.Fla.1998), *aff'd,* 170 F.3d 188 (11th Cir.1999) (unpublished table decision). However, we find the analysis of *Zalka* to be cursory and irreconcilable with the plain language of the regulation, and therefore decline to follow it here.

■ It is true that many of our sister courts of appeal, in considering other requirements of Section 2560.503–1, in particular the notice of reasons for a denial and the right to appeal, have held that a plan administrator's decision made in substantial compliance with the regulation can be upheld. *E.g., Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 492–93 (D.C.Cir. 1998); *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 234–36 (4th Cir.1997); *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 690, 693–94 (7th Cir.1992). Substantial compliance is thus a doctrine that forgives technical noncompliance for purposes of review of a plan administrator's discretionary decision. We are faced here with the very different question of whether substantial compliance can block or delay a plaintiff's access to the federal courts. The proposition that substantial compliance can prevent overturning a decision is akin to harmless error analysis, establishing merely that a decision need not be carried out with absolute procedural perfection so long as the regulatory purpose is fulfilled. On the other hand, adopting the proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information. Such a result would render the plain language of Section 2560.503–1(h)(1) a nullity.

On a final note, Prudential, on appeal, attempts to recast the substantial compliance issue as one of equitable tolling. Prudential argues that because Nichols has thwarted Prudential's attempts to gather needed medical evidence, the regulatory deadline should be tolled for the period of this delay. It further argues that Section 2560.503–1 has been amended since the time period at issue here to include just such a tolling provision. Claims Procedure, 65 Fed.Reg. 70,246, 70,-270 (Nov. 21, 2000) (codified at 29 C.F.R. § 2560.503–1(i)(4) (2004)). The amendment of the regulation may well indicate the Secretary of Labor's understanding that the earlier version of the regulation applicable here did not incorporate such tolling. But we need not decide this issue, as equitable tolling will not place Prudential in compliance with the deadlines. The deadline expired on day 60 (or a few days after, if we were to accept Prudential's mailing time argument), Prudential first requested an IME as part of the appeals process on day 81, and Nichols refused the IME on day 88. A tolling period cannot delay the expiration of a deadline when that deadline has already expired.

### III. Standard of District Court Review of the Plan Administrator's Decision

■ Nichols finally argues that on remand, the district court should review Prudential's benefit determination de novo.[3] We review a plan administrator's decision de novo unless the plan vests the administrator with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case

we use an "abuse of discretion" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Nichols argues that the plan instrument in question here does not vest any discretion in the plan administrator, and that in any case, there is no decision to which to defer because of Prudential's inaction.

■ We agree on both counts. A reservation of discretion need not actually use the words "discretion" or "deference" to be effective, but it must be clear. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir.1999). Examples of such clear language include authorization to "resolve all disputes and ambiguities," or make benefits determinations "in our judgment." *Id.* In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does. *See id.* at 252. Thus, in *Kinstler*, we found that a requirement to "submit satisfactory proof of Total Disability to [the plan administrator]" was ambiguous, as it could mean submission to the administrator of satisfactory proof or submission of proof satisfactory to the administrator. *Id.* at 251–52 (alteration in original omitted). Because the plan administrator had the burden of proving discretion, we resolved the ambiguity against the administrator and found no discretion. *Id.* at 252.

■ A similar analysis applies here. The plan states that a disability "exists when Prudential determines that all of these conditions are met" and then goes on to list specific conditions. The plan also states that Prudential will pay benefits

---

3. In the proceedings below, Nichols first conceded the use of an arbitrary and capricious standard, and then withdrew that concession. To the extent that it is arguable that this issue is raised for the first time on appeal, we still have discretion to consider the issue if we are faced with a pure question of law. *Sniado*, 378 F.3d at 213. Because the relevant facts are not disputed, and in the interests of judicial economy, we will resolve the appropriate standard of review here.

"when Prudential receives written proof of the loss." The latter language is clearly objective. The phrase "when Prudential determines" is more troubling, but ultimately lacks sufficient indicia of subjectivity as required by *Kinstler*. *See O'Sullivan v. Prudential Ins. Co. of Am.*, No. 00 Civ. 7915, 2001 WL 727033, at *2, 2001 U.S. Dist. LEXIS 8637, at *5–7 (S.D.N.Y. June 28, 2001) (finding that identical language vested no discretion in plan administrator). The language gives Prudential the power to make the determination, but the list of specific conditions requires that such power be exercised only in accordance with objective standards. To find discretion, we would have to read in language, effectively amending the provision to find disability "when Prudential determines *to its satisfaction* that all these conditions are met." We therefore approve of *O'Sullivan* and hold that the plan vests no discretion in Prudential.

■ Alternatively, even if Prudential was vested with discretion, it made no valid exercise of that discretion here. Our sister courts of appeal have again split on the question of whether a "deemed denied" claim is always entitled to de novo review. A majority of circuits have held that, absent substantial compliance with the deadlines, de novo review applies on the grounds that inaction is not a valid exercise of discretion and leaves the court without any decision or application of expertise to which to defer. *Jebian*, 349 F.3d at 1106–07; *Gilbertson*, 328 F.3d at 632–33; *Gritzer v. CBS. Inc.*, 275 F.3d 291, 295 (3d Cir.2002). On the other hand, the Fifth Circuit has held that a "deemed denied" claim is still entitled to deferential review, apparently reasoning that the decision to deny is the same whether accomplished formally or by inaction. *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir.1993). The Eighth

Circuit has marked out a middle road, using deferential review unless the failure to meet the deadline raises serious doubts about the plan administrator's determination. *Seman v. FMC Corp. Ret. Plan for Hourly Employees*, 334 F.3d 728, 733 (8th Cir.2003).

We agree with the majority view. *Firestone* derived its holding from principles of trust law that "make a deferential standard of review appropriate when a trustee exercises discretionary powers." 489 U.S. at 111, 109 S.Ct. 948. The Supreme Court explicitly rejected the notion that the authorization of some set of discretionary powers of the plan administrator rendered all actions of the administrator discretionary. *Id.* at 113, 109 S.Ct. 948. In light of this reasoning, we conclude that we may give deferential review only to actual exercises of discretion. A "deemed denied" claim is not denied by any exercise of discretion, but by operation of law on the 60th (or 120th) day after the appeal is requested. We therefore hold that a "deemed denied" claim is entitled to de novo review, and place ourselves in harmony with *Jebian*, *Gilbertson*, and *Gritzer*.

We note that *Jebian* and *Gilbertson* further hold that arbitrary and capricious review might still be appropriate if the plan administrator substantially complied with the deadlines. *Jebian*, 349 F.3d at 1107; *Gilbertson*, 328 F.3d at 634–35. We do not reach the question of whether to adopt this form of the substantial compliance doctrine. Prudential failed to comply in any reasonable respect with the regulatory deadlines; indeed, it did not even acknowledge the request for an appeal until after the deadline had expired, and had not rendered any decision at the time of suit. There may be good equitable and policy reasons for a substantial compliance exception to our holding today that may even be sufficient to overcome our analysis of the

requirements of *Firestone*. *See Gilbertson*, 328 F.3d at 634–36.[4] But this is not a case in which it would be appropriate to develop or apply such an exception.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is vacated, and the case is remanded for de novo review of Nichols's entitlement to benefits under the plan.

---

4. Indeed, the recent amendment of the regulations, to include a tolling provision for an claimant's failure to cooperate, no doubt reflects such reasons.