Anthony and Adele **GAGLIARDO**, parents of a disabled student, Stephen G., Plaintiffs,

v.

**ARLINGTON CENTRAL SCHOOL DISTRICT, Defendants.**

No. 04 CIV. 1802(CM).

United States District Court, S.D. New York.

June 17, 2005.

Rosalee Charpentier, Kingston, NY, for Plaintiffs.

Jeffrey James Schiro, Leah Lennon Murphy, Kuntz, Spagnuolo, Scapoli & Schiro, P.C., Bedford Village, NY, for Defendants.

OPINION AND ORDER DENYING WITHOUT PREJUDICE · BOTH PARTIES MOTIONS FOR SUMMARY JUDGMENT, VACATING THE STATE REVIEW OFFICER'S SUA SPONTE DISMISSAL OF PLAINTIFFS' APPEAL FROM THE DECISION OF THE IMPARTIAL HEARING OFFICER AND REMANDING THE CASE TO THE SRO FOR A MERITS DETERMINATION

MCMAHON, District Judge.

In this case brought pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400, et seq., ("IDEA"), the State Review Officer ("SRO") dismissed sua sponte the plaintiff-parents' appeal from an adverse decision by the Impartial Hearing Officer ("IHO"), on the ground that the appeal was untimely filed. The SRO's decision was predicated on an incorrect assumption that the parents delayed taking their appeal from an adverse decision of the IHO until more than two months beyond the deadline for taking that appeal. Because that assumption was indisputably erroneous, the SRO's dismissal of the interlocutory appeal must be vacated.

■ The question then becomes what to do about the parties' cross motions for summary judgment. Since this Court reviews the administrative record de novo in an IDEA case, I suppose I could simply view the administrative process as complete and proceed to the merits of the parties' dispute. I do not think that the wisest course, nor is it required (as plaintiff's counsel assert). See, e.g., Nichols v. Prudential Ins. Co. of America, 406 F.3d 98 (2d Cir.2005) (discussing district court's ability to remand issues to an administrative agency); Gabel ex rel. L.G. v. Board of Educ. of Hyde Park Central School Dist., 368 F.Supp.2d. 313 (S.D.N.Y.2005). The fact that courts engage in de novo review

"is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities . . ." Board of Education v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Federal courts must give "due weight" to the results of administrative proceedings, mindful that judges lack the specialized knowledge and experience required to resolve persistent and difficult questions of educational policy. Walczak v. Florida Union Free School Dist., 142 F.3d 119, 129 (2d Cir. 1998). I am no expert in educational policy, especially where, as here, the issue is whether a District that recommended sending plaintiffs' son to Private School # 1 (at District expense) must instead pay for tuition at Private School # 2, which was chosen by the parents. I would much prefer that the State Education Department opine on this issue, and the parties would be better served by having a SRO's ruling on the subject.

Remand to the SRO is particularly appropriate where, as here, I have been advised by the parents that the State Education Department has found the IHO to be guilty of misconduct in connection with this case. This issue is not fully developed in the parties' briefs, and while I think I have figured it out—that is, I believe counsel for the parents is suggesting that the IHO improperly "backdated" his decision after the parents complained that the matter was not being decided with sufficient promptness—there is no suggestion in the State Education Department's decision that the IHO issued his decision with a "misleading" decision date, and the SRO certainly made no finding of IHO bias, although bias is alleged by plaintiffs. If the propriety of the IHO's behavior is in question, I must be given all relevant information concerning the IHO and any State Education Department determinations regarding his conduct in this case.

As set forth below, the SRO will have 60 days to issue an opinion on the merits. If he does not do so, I will conclude that complete exhaustion of administrative remedies is futile and will proceed to review the record without further ado.

*The SRO's Determination that Plaintiffs' Appeal was Untimely is Vacated Because it was Predicated on an Erroneous Premise*

In their IDEA proceeding, plaintiffs seek reimbursement for the cost of their son's tuition at Oakwood Friends School for the 2002–03 school year.

A hearing on their request for relief was conducted before Eric S. Zaidens, an Impartial Hearing Officer, who was appointed in August 2002. Evidence was taken on September 17 and 25, October 22 and 25, and November 12, 2002, and again on January 16 and 17 and March 4 and 25, 2003. The parties asked for time to file post-hearing memoranda. It took them two months to write those memoranda, and they were not received by the IHO until June 5, 2003.

The IHO issued a decision that on its face is dated June 19, 2003, which means it took him about two weeks to prepare. In that decision, the IHO denied the parents' claim for tuition reimbursement.

The parents appealed from the IHO's decision (*when* they appealed will be the subject of considerable discussion below). On November 6, 2003, the State Review Officer, Paul F. Kelly, issued a decision dismissing the appeal. He reasoned as follows: "In the instant case, *although the record does not reveal when petitioners received the decision,* petitioners served respondent with a notice of intention to seek review 82 days from the date of the decision. The petition in this appeal was not served upon respondent until 110 days after the date of the decision. Petitioners have not alleged nor shown that they received the hearing officer's decision in an untimely manner." (SRO Decision at 3.) (Emphasis added)

The italicized words in the SRO's decision are important. The SRO was obviously laboring under a the perfectly legitimate apprehension that the parties received the opinion shortly after the date on which is was purportedly written—June 19, 2003—when he concluded that plaintiffs had been unduly dilatory in appealing. In fact, elsewhere in his opinion, he stated, "Petitioners have offered no excuse for their delay of waiting four months from the date of the hearing officer's decision to serve the petition on respondent." (*Id.* at 2).

It turns out that the SRO was laboring under a misapprehension. Petitioners did not "wait[ ] four months" after learning of the IHO's decision before appealing it. Both sides agree that no one saw the IHO's decision until over two months after the June 19, 2003 date it bears on its face. In fact, plaintiff's counsel had obviously not received the IHO's decision shortly after June 19, because she filed a complaint with the State Education Department in July 2003, complaining that the IHO was unduly delaying the decision.

In their Rule 56.1 Statement plaintiffs imply that the IHO failed to write his decision until after they filed their complaint, and then back-dated it. She further asserts that, in March 2004, the State Education Department held the parents' complaint as to hearing officer competency to be "founded." I have not been provided with a copy of that decision, and because I have had issues in other cases (and in this one as well—see below) with representations made by plaintiff's counsel, I am unwilling to take her word for what it says.

But whether the decision was written in June or August is, for purposes of *this* opinion, irrelevant.[1] As I noted previous-

---

1. It would not be irrelevant to a review of the IHO's decision on the merits, which is one

ly, both sides agree that they did not receive the decision until late August 2003. According to plaintiffs, the State Education Department, through its Impartial Hearing Reporting System, confirmed that the decision (whenever it was written) was faxed on August 25, 2003. The defendant district asserts that both sides received the decision until August 26, 2003. That is consistent with its being faxed on August 25, assuming it was faxed at the close of the business day.

Plaintiff asserts that the decision was faxed to her after her office closed on August 25. But plaintiffs' attorney, claims that she received it when she arrived at work three days later, on August 28, not August 26. To be precise, she asserts that the decision was "stamp-received on Monday August 28, 2003" by her office.

If August 28, 2003 had indeed been a Monday, I would readily conclude that the decision was received on that day. Indeed, I was prepared to make such a finding. But first I consulted a calendar. And when I did, I learned that August 28, 2003 fell on a Thursday. Plaintiffs' counsel did not supply me with a copy of the "stamp-received" document, but if she really has a document that is stamped, "Monday, August 28, 2003," then there is

some chicanery afoot and it has nothing to do with the IHO.

I conclude that the decision was faxed to the parties at the end of the day on Monday, August 25 and I deem the parties to have received it at the beginning of the day on Tuesday, August 26, 2003. Perhaps no one in plaintiff's office looked at the decision until Thursday, August 28— but it was received in her office on Tuesday, August 26.[2]

State regulations give an aggrieved party 30 days to notify his opponent of intent to seek review and 40 days to initiate (by service on the opposing party) an appeal to the SRO. The parents served a Notice of Intent to Seek Review on the District on September 6, 2003. That notice was timely under the 30 day rule. N.Y.C.R.R. 279.2(b). In fact, the notice was filed several weeks earlier than was required—an excellent safety precaution against a claim of untimeliness.

Unfortunately, the petition formally commencing the appeal was not filed in a similarly early manner. The petition contained in the record is dated October 3, 2003. There is no evidence that it was served and filed on October 3. In her brief to this court, counsel asserts that she filed the appeal on October 6. (Plaintiff's Brief at 3.)[3] But plaintiffs' counsel could not

---

reason I am reluctant to conduct a review of the IHO's decision on the merits with the record in its present state.

2. For the most part, I rely on defendant for accurate dates. Plaintiffs' moving brief is replete with erroneous dates. For example, she states, at page 5, the brief reads: "On May 30, 2003, the record before the hearing officer was closed. No decision was forthcoming for more than 45 days, On July 16, 2002, the parents filed a complaint with the State Education Department for denial of a final decision." Obviously, plaintiffs' counsel meant July, 16, 2003; the IHO was not even appointed until August 21, 2002. My opinions have been known to include the occasional typographical error, so I am not unsympath-

etic to lawyers who make equally occasional errors. But this brief is replete with them (for another example, see n. 2, infra). Unfortunately, the reference to Monday August 28—a non-existent date—could not possibly be a typographical error, because the timeliness of plaintiff's appeal depends of the decision's having been received on August 28 rather than August 26. See infra at 464.

3. Actually, the brief says the appeal was filed on October 6, 2002—about 10 and a half months before Ms. Charpentier ever saw the decision of the IHO. This date is wrong in not one, but two respects. Another typographical error, I presume. They are particularly problematic in cases involving limitations of time issues.

possibly be correct, because the unsworn statement in her brief conflicts with her sworn affidavit of service, in which the very same attorney who wrote the brief—Ms. Charpentier—stated under penalty of perjury that her petition and notice of petition were served on October 7, 2003. I assume that the affidavit of service was created contemporaneously with service of the papers, and so I am inclined to credit it, and not the unsworn brief filed many months later in this court. Furthermore, plaintiff's 56.1 statement also states that, "By Notice with Petition, served upon the District Clerk on *October 7, 2003,* the Plaintiffs appealed the decision of the Impartial Hearing Office of State Review ('SRO') to the State Education Department. Donegan Aff. ¶ 57." Plaintiff's 56.1 Statement ¶ 54. I find that the notice of appeal and petition were served on the District on October 7, 2003.

Had the petition been served on the day the notice accompanying it was dated—October 3, 2003—it would have been timely. For that matter, had the petition be served on the date that the petition itself was dated, which is also the day claimed in the brief filed with this court—October 6, 2003—it would have been timely. Under N.Y. Educ. Law § 4404(2) and 8 N.Y.C.R.R. § 279.2(b), however, the parents' appeal was untimely, because it was served on the 42nd day following its receipt. This assumes—generously—that receipt occurred on August 26, the day after the decision was faxed. Since the day of receipt does not count toward the 40 days, August 27 is the first of the 40 days and October 5 was the 40th day. But in 2003, October 5th fell on a Sunday, so service would have even been timely on the 41st day—Monday, October 6.[4] I checked to see if Columbus Day (a legal holiday, which would have given the parents an additional day) fell on October 6 in 2003—but it did not. Columbus Day was October 13. So October 6 was the day by which service and filing had to be effected in order to commence a timely appeal.

The appeal was, therefore, untimely filed.

One might think that this would dispose of the issue. The SRO dismissed the appeal because it was untimely; the appeal was in fact untimely.

But the SRO did not dismiss the appeal because the petition was filed one day late. He dismissed the appeal because he thought it was filed *two and a half months late.* He assumed that the decision was received shortly after the date it bore—not an unreasonable assumption, but one that in this case was wrong by a full two months and more. Having made this perfectly understandable error, the SRO then assumed (wrongly) that the parents knew they were months late in filing their appeal and invoked 8 N.Y.C.R.R. 275.16, 279.1[a], as a basis for dismissing the appeal *sua sponte.* The cited regulation provides that parties who are filing an untimely appeal must explain their reasons for the belated filing in the petition. So here, because he assumed that the decision had been re-

---

**4.** As has happened before, Ms. Charpentier's penchant for waiting until the very last minute to do things has tripped her up. *See, e.g., Mackey v. Board of Education for the Arlington Central School District,* 03 Civ. 5607, (CM), —— F.Supp.3d ——, 2005 WL 1430472 (S.D.N.Y March 9, 2005) on pages 13–15. The fact that Ms. Charpentier baldly misrepresented an easily-ascertained fact in the *Mackey* case (*see* discussion on page 14)

makes me particularly sensitive to her assertion that she received the IHO's decision on "Monday, August 28, 2003"—another easily-ascertained fact that turns out to be untrue. And it explains why I am unwilling to assume that she has correctly described the decision of the State Education Department that was allegedly handed down in March 2004—the one that purports to chastise the IHO for playing fast and loose with dates.

ceived by the parties in June, the SRO assumed that the parents knew they were filing well after the deadline and placed on them the onus of asserting in their petition some excuse for waiting four months before filing their appeal.

But plaintiffs did not delay four months before filing their appeal—indeed, when the notice attached to the petition was written (October 3) there were still three days left to file a timely appeal! So they had no reason to address any non-existent two and a half months' "delay" in the filing of the petition.

■ The SRO repeatedly emphasized the extremely long period between the date on the decision and the date the petition was served as the justification for his decision. That being so, I have no reason to believe that he would have taken the same *sua sponte* action had he been aware that plaintiff's appeal was only one day late, rather than 70.

Accordingly, I vacate the SRO's decision dismissing the appeal.

*Further Proceedings*

Because I have vacated the decision dismissing the appeal, the appeal is reinstated. It can and should be heard, for the reasons set forth at the beginning of this decision. Therefore, the matter is remanded to the SRO, and the parties' premature cross-motions for summary judgment are denied. I deny them without prejudice, however.

No one and everyone is at fault here.[5] But this remand ought not prejudice the parents unduly. Assuming the SRO issues a decision within 60 days of the date of this

decision, we will follow the following procedure: plaintiffs will have 10 days either to withdraw this action (if they win on their administrative appeal) or to amend their complaint in view of the SRO's determination (if they lose). The parties will then have 20 days to file new cross-motions for summary judgment accompanied by simultaneous briefs. Those briefs should supplement the briefs already filed, which means they will be limited to a discussion of why the SRO's determination is right or wrong. Since the parties have already responded to each others' arguments on the merits, the Rule 56.1 Statements and the Memoranda of Law already filed will be deemed part of the record on the new motions for summary judgment. I will decide any appeal promptly.

If there is no decision from the SRO by the 60th day after the date of this decision, I direct the District's counsel to notify me by fax on Day 61. I will then deem exhaustion futile and I will restore the cross-motions for summary judgment to the calendar and adjudicate them on their merits.

This constitutes the decision and order of the Court.

---

**5.** The District was well aware that the IHO's decision was not received four months prior to the time the appeal was filed, but said nothing to disabuse the SRO of his error after he issued his decision dismissing the appeal. However, the SRO, having acknowledged in his opinion that he did not know when the parties received their copies of the decision, should have asked them when they received the decision before dismissing the appeal—or, for that matter, before he assumed that the parents had waited months beyond the deadline and imposed on them the burden reserved for late-filing appellants under the NYCRR.