**EASTMAN KODAK COMPANY,**
Plaintiff,

**Martin M. Coyne, Plaintiff–Appellant**

v.

**STWB, INC., formerly known as Sterling Winthrop Inc., Bayer Corp., formerly Miles Inc., The Supplemental Benefit Plan Committee of Sterling Drug Inc., and The Sterling Drug Inc. Supplemental Benefit Plan, Defendants–Appellees.**

**Docket No. 05–2937–cv.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 2, 2006.

Decided: June 26, 2006.

Karen M. Wahle (Khuong G. Phan, on the brief), O'Melveny & Myers LLP, Washington, D.C., for Plaintiff–Appellant.

John J. Myers, Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, Pa., for Defendants–Appellees.

W. Iris Barber, Senior Trial Attorney (Howard M. Radzely, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Nathaniel I. Spiller, Associate Deputy Solicitor for Supreme Court Litigation and Appellate Advice, and Karen L. Handorf, Counsel for Appellate and Special Litigation, on the brief), for Amicus Curiae Elaine L. Chao, Secretary of the United States Department of Labor, in support of Plaintiff–Appellant.

Jay E. Sushelsky, AARP Foundation Litigation (Melvin R. Radowitz, AARP, on the brief), for Amicus Curiae AARP, in support of Plaintiff–Appellant.

Before CALABRESI and STRAUB, Circuit Judges, and DRONEY, District Judge.*

CALABRESI, Circuit Judge.

In this appeal, we are asked to decide whether an employee benefit plan participant is required, under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1101 *et seq.*, to exhaust an administrative claims procedure that was adopted by his plan only after he had already brought an ERISA action to recover benefits. The district court held that the exhaustion of such remedies was a prerequisite to seeking relief in court, and so dismissed the plaintiff's suit without prejudice. We hold that the exhaustion of such remedies is excused under 29 C.F.R. § 2560.503–1(*l* ). Accordingly, we vacate the decision of the district court, and re-

---

* The Honorable Christopher F. Droney, United States District Court for the District of Connecticut, sitting by designation.

mand to the district court for a benefits determination.

## BACKGROUND

While an employee of Sterling Winthrop ("Sterling"), Plaintiff–Appellant Martin Coyne began participating in employer-sponsored benefit plans.[2] These included Sterling's standard retirement plan as well as its Supplemental Benefit Plan ("Supplemental Plan" or "Plan"), a so-called "top hat" plan.[3] Top hat plans are designed to provide certain employees with payments over and above the benefits provided by "qualified" employee benefit plans—*i.e.,* plans that are eligible for favorable tax treatment, such as Sterling's standard retirement plan. The Internal Revenue Code limits the value of benefits that may be paid under qualified plans, *see* 26 U.S.C. §§ 401(a)(17), 415—hence the need for top hat plans when employers wish to provide a higher level of deferred compensation to some of their employees. Top hat plans are exempt from many provisions of ERISA, including the participation and vesting, funding, and fiduciary responsibility requirements, *see* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), but like qualified plans, they are subject to disclosure requirements, to civil enforcement, and to the duty to have a claims procedure, *see* 29 U.S.C. §§ 1021, 1132, 1133.

In Coyne's case, Sterling's Supplemental Plan promises to make up the shortfall between (a) what the qualified plan *actually* pays, and (b) the level of regular pension benefits participants *would* receive, but-for the limits placed on qualified plan payouts by the tax code. The Supplemental Plan confers "full power and authority" on the Plan committee to make "binding and conclusive" decisions on benefit claims and all other issues arising under the Plan. Based on estimates from an actuarial consulting firm, Coyne places the pre-tax value of his benefits under the Plan at roughly $11,300 per month.

Coyne started working for Sterling in 1981. He and the company eventually parted ways amid a string of corporate recombinations. As a result, responsibility for Coyne's benefits under the Supplemental Plan seemed, for a time, to have gotten lost in the shuffle. Sterling was bought by Eastman Kodak Company ("Kodak") in 1989, at which point Sterling's retirement programs became part of Kodak's retirement plan. Sterling changed hands again in 1994, becoming a wholly-owned subsidiary of Defendant–Appellee Bayer Corporation ("Bayer") through a two-stage, three-firm transaction that also involved SmithKline Beecham. *See Eastman Kodak Co. v. STWB Inc.,* 232 F.Supp.2d 74, 77–83 (S.D.N.Y.2002). The parties agree, however, that none of the transactions described above terminated Sterling's liability for any payments due to Coyne under the terms of the Supplemental Plan. Coyne continued to work for Sterling until shortly after the company's 1994 sale to Bayer, when Coyne became an employee of Kodak, for whom he worked until his retirement in July 2003.

2. Sterling subsequently changed its name to STWB Inc. For the sake of simplicity, where possible we refer to the company as "Sterling" without regard to the name change.

3. The parties' submissions reflect a disagreement as to when Coyne began participating in the Supplemental Plan. Coyne alleged to the district court that he became a participant in 1982, and Defendant–Appellee Bayer Corporation ("Bayer") counters that the Plan did not take effect until January 1, 1991, by which point Sterling's standard retirement plan had been combined with Eastman Kodak Company's. *See infra.* This disagreement is not material to the issue on appeal, and we therefore do not attempt to resolve it.

Starting in May 2003, as Coyne approached retirement, representatives of Kodak contacted Bayer by e-mail on Coyne's behalf to arrange for payment of Coyne's benefits under the Supplemental Plan. It seems that no employee prior to Coyne had asserted a claim under the Plan—indeed, Coyne may be the only person eligible for benefits under it. Coyne's request for benefits was thus far from routine, and Bayer was not adequately prepared to handle it. Bayer had no claims procedure in place, and none was described in the Plan. Over the course of a year, Kodak made a number of entreaties to Bayer, by e-mail, express mail, and fax, and these were met variously with skepticism, befuddlement, and silence. Initially, Bayer representatives expressed some doubt that the company was liable for Coyne's benefits. After requesting a copy of the Plan and related documents, which Kodak duly sent, Bayer then voiced some confusion as to why the claim was being pursued before Coyne had reached the retirement age of 55. On October 8, 2003, Bayer reported that it would convene its benefits group to address Coyne's claim. Although Kodak followed up with e-mails, Bayer appears not to have responded. Finally, on January 30, 2004, Kodak's controller e-mailed to announce that Kodak would "proceed as necessary to enforce our rights under the stock purchase agreement" pursuant to which Bayer acquired Sterling and assumed its liabilities.

Coyne became eligible to receive benefits under the Supplemental Plan on March 1, 2004. Still having heard nothing from Bayer, Kodak paid Coyne's first month of benefits. Kodak's controller again contacted Bayer, now seeking indemnification for the payment under the terms of the sale of Sterling to Bayer. Bayer did not respond, and in June 2004 Kodak and Coyne together filed suit in the United States District Court for the Southern District of New York. In the amended complaint,[4] Coyne sought recovery of benefits owed under the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). Kodak sought indemnification for the payments it had made to Coyne, and Kodak and Coyne together sought a declaratory judgment that Bayer is obligated to pay Coyne benefits under the Supplemental Plan for the rest of Coyne's life, and to Coyne's wife for the rest of her life if he pre-deceases her. STWB Inc., Bayer, Sterling's Supplemental Benefit Plan's Committee, and the Sterling Supplemental Benefit Plan were named as defendants.[5]

In its answer, filed October 15, 2004, Bayer alleged that Coyne had failed to exhaust administrative remedies. At a pre-trial conference held the following week, Bayer explained that those administrative remedies consisted of a new claims procedure added to the Plan by "Amendment No. 1" ("Amendment"), which Sterling's Board of Directors adopted on July 12, 2004. The Amendment was retroactive, and made the claims procedure effective as of January 1, 2004.

Kodak and Coyne moved for summary judgment. Coyne argued that the Amendment had an adverse impact on his vested rights under the Plan, and hence, was invalid under the terms of the Plan, which

---

4. Kodak and Coyne amended the complaint to add the ERISA claim and additional defendants after Sterling and Bayer moved to dismiss the initial complaint, *inter alia*, on the grounds that the breach of contract claim that was the essence of the original complaint was preempted by ERISA.

5. Defendant STWB Inc. was voluntarily dismissed from the case below and is no longer before this court. For the sake of simplicity, we use the name of the corporate parent, Bayer, to refer to all remaining Defendants–Appellees collectively.

forbade amendments that "retroactively impair or otherwise adversely affect" vested rights. The district court agreed with Coyne that his rights under the Plan were vested, but found that these rights were not impaired or adversely affected by the "purely procedural" introduction of a claim procedure. *Eastman Kodak Co. v. Bayer Corp.*, 369 F.Supp.2d 473, 479 (S.D.N.Y. 2005). Accordingly, the district court concluded that the Amendment was valid, and that Coyne had failed to exhaust the available administrative remedies. The action was dismissed without prejudice to its refiling after Coyne exhausted the claims procedure. The district court also directed Bayer to accept Coyne's complaint as a claim for benefits that triggered the Plan's administrative procedures. *Id.* at 483.

Kodak and Coyne filed a notice of appeal, but Kodak subsequently withdrew from the appeal. In response to an inquiry from Coyne, the district court clarified that the administrative claims proceeding was not stayed pending appeal.[6]

## DISCUSSION

■ ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation. *See* 29 C.F.R. § 2560.503–1 (detailing requirements of claims procedures, including notification of adverse decisions within 90 days and the availability of a full and fair review of the initial determination); *see also Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir.2000) (noting that "there is a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases' ") (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d

588, 594 (2d Cir.1993)). Unless a "clear and positive showing" is made that it would be futile for the claimant to pursue her claim through the internal claims process, "that remedy must be exhausted prior to the institution of litigation." *Jones*, 223 F.3d at 140 (internal quotation marks omitted). We review *de novo* a district court's dismissal of ERISA claims for failure to exhaust administrative remedies. *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105 (2d Cir.2005).

### A. *Appellate Jurisdiction*

■ As a threshold matter, Appellees contend that this court lacks jurisdiction to hear Coyne's appeal, because, they submit, the district court's order was not a final decision within the meaning of 28 U.S.C. § 1291. Appellees are correct, of course, that "[f]ederal appellate jurisdiction generally depends on the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal quotation marks omitted). But we find that this condition is satisfied here, and, therefore, that we have jurisdiction to hear Coyne's appeal.

The district court "dismissed [Coyne's suit] without prejudice to its refiling after Coyne has exhausted the administrative procedure under the amended Plan." *Eastman Kodak*, 369 F.Supp.2d at 483. It is well established in this circuit that a dismissal without prejudice, absent some retention of jurisdiction, is a final decision within the meaning of 28 U.S.C. § 1291, and hence, appealable. *See Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir.2004)

---

6. At oral argument, counsel for Coyne indicated that the administrative claims proceeding had not resulted in a benefit determination in Coyne's favor. Hence, there is no suggestion that the instant appeal may be moot.

(citing *Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir.1968)). Indeed, recently *Nichols v. Prudential Insurance Co. of America*, 406 F.3d 98 (2d Cir.2005), we reaffirmed this principle specifically in the context of ERISA claims. In that case—as in this one—the district court found that the plaintiff had failed to exhaust administrative remedies, and dismissed the suit without prejudice to its refiling after exhaustion. *See Nichols v. Prudential Ins. Co. of Am.*, 306 F.Supp.2d 418, 424 (S.D.N.Y. 2004). The district court further directed the defendant to · render a decision on Nichols's benefits claim within thirty days of her submission of additional records. *Id.* The defendant argued that we lacked jurisdiction to hear the appeal, but we concluded that the district court's disposition was a final decision within the meaning of 28 U.S.C. § 1291 from which appeal lay as of right. *Nichols*, 406 F.3d at 103–04.

Appellees argue that *Nichols* is not controlling. In that case, Appellees observe, the district court's order "le[ft] the primary responsibility for further action in the hands of Nichols," who had to take steps to exhaust her administrative remedies before returning to court. *Id.* at 104. Here, by contrast, the district court jump-started the administrative process without requiring any further action on Coyne's part, by directing the Plan's administrator to accept Coyne's complaint as a claim for benefits. *See Nichols*, 306 F.Supp.2d at 424. But this is a distinction without a difference, at least insofar as this court's jurisdiction to hear the appeal is concerned. In each instance, the court's order "terminates litigation and the court's responsibilities, while leaving the door open for some new, future litigation." *Nichols*, 406 F.3d at 104. And as such, it is subject to appellate review. *Cf. Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646 & n. 8 (2d Cir.2002) (leaving open the question whether an order *remanding* to an ERISA plan administrator is an appealable final decision).

## B. *Exhaustion of Administrative Remedies*

Having established our jurisdiction, we turn to the principal question in this case: Whether a benefits claimant may be required to exhaust administrative remedies that were adopted only after the claimant has brought an action to recover benefits.

Bayer insists that the retroactive Amendment that added the claims procedure is valid under the terms of the Plan, and hence, may be applied to Coyne. Coyne gives a number of reasons why he was not required to exhaust the claims procedure. First, he argues that administrative remedies are "deemed exhausted" pursuant to a Department of Labor regulation. 29 C.F.R. § 2560.503-1($l$) provides that where a plan fails to establish or follow ERISA-compliant claims procedures, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan"; accordingly, the claimant is, without more, allowed to bring a suit to recover benefits. Second, Coyne argues that the Amendment adversely affects his rights—and is therefore invalid under the Plan's terms. This is so, Coyne contends, because the change permits the Plan's administrator, rather than a court, to make a benefit determination in the first instance, and such a determination is subject only to deferential "arbitrary and capricious" review in the courts. On a related note, after oral argument Coyne submitted a letter, pursuant to Federal Rule of Appellate Procedure 28(j), drawing our attention to a recent decision of this court, *Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2d Cir.2006), in which we held that vested rights are violated when an

employee welfare benefit plan is altered to commit benefit determinations to the plan administrator's discretion, where previously determinations were subject to *de novo* review. In the case before us, the Supplemental Plan, by its terms, already gave the administrator discretionary authority to determine benefits. But *Gibbs* is arguably relevant because, prior to the adoption of a claims procedure, decisions would as a practical matter be made *de novo* by the district court, since no benefit determination that could receive deference existed.

■■■ We are persuaded that 29 U.S.C. § 2560.503–1(*l* ) controls the outcome here, and so we do not reach Coyne's other arguments. First, however, we note that Bayer objects to Coyne's present reliance on the regulation, as Coyne failed to raise it before the district court. It is true that this court ordinarily will not hear arguments not made to the district court. *See, e.g., Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89, 95 (2d Cir.2000). But appeals courts may entertain additional support that a party provides for a proposition presented below. *See Yee v. City of Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). Here, we regard Coyne's invocation of the regulation not as an entirely new argument, but as additional support for a claim that Coyne has made from the beginning: that Plan participants must exhaust only those administrative remedies in place at the time suit is filed. Accordingly, we consider it appropriate to take cognizance of the regulation in deciding this appeal.

■■ The "deemed exhausted" provision reads in full:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503–1(*l* ).[7] Bayer admittedly had no ERISA-compliant claims procedure in place when Coyne first sought benefits. Still, Bayer notes, an ERISA-compliant claims procedure was adopted later, and it was given retroactive effect to before the time when Coyne filed his suit. Hence, Bayer suggests, the regulation does not apply, and Coyne must exhaust available remedies.

Bayer's argument is not expressly foreclosed by the language of the regulation. The regulation provides that administrative remedies are deemed exhausted "[i]n the case of the failure of a plan to establish or follow [ERISA-compliant] claims procedures"; it does not indicate what the relevant timeframe is, nor what happens when a plan changes procedures. In theory at least, the later adoption of remedies with retroactive effect could undo the earlier exhaustion. But as a practical matter, this interpretation of the regulation is a nonstarter, for reasons given by Coyne as well as by amici curiae the Secretary of Labor and the AARP. On such a reading, the regulation would be worse than ineffectual: it would create perverse incentives for plans not to meet their obligations under

---

7. The "requirements of this section" include, *inter alia,* timely benefit determinations, written or electronic explanation of adverse determinations, and the opportunity for appeal. *See* 29 C.F.R. §§ 2560.503–1(f), (g), (h).

ERISA. Plans without ERISA-compliant claims procedures in place would have the power to force claimants, first, to resort to litigation to obtain their benefits, and then, to abandon their suit at whatever point (prior to final judgment) the plan adopted a claims procedure. On Bayer's interpretation, far from encouraging plans to meet their obligations under ERISA, the regulation would give plans every incentive to delay adopting claims procedures as long as possible.

It is hard to imagine that this is the result that the Secretary of Labor had in mind in promulgating 29 C.F.R. § 2560.503–1(*l*). We need not tax our imaginations, though, because the Secretary of Labor has made her views clear, in her amicus brief and through her appearance (by counsel) at oral argument. The Secretary confirms that "nothing in the claims regulation permitted Bayer to effectively 'undeem' exhaustion by enacting, for the first time, procedures that complied with the claims regulation after Coyne filed suit and after failing to offer an appropriate procedure in the many months preceding Coyne's lawsuit." Sec. of Labor Amicus Br. at 10–11; *see also id.* at 14 ("The regulation's 'deemed exhausted' directive would be totally frustrated if plans could simply amend the plan to resolve such procedural irregularities after the participant pursued his rights in court."

Giving retroactive effect to a plan amendment in these circumstances thus plainly conflicts with the 'deemed exhausted' regulation."). Coyne's reading of the regulation, then, is also the Secretary of Labor's, and it is an interpretation that we find persuasive.[8]

A look at the context in which the "deemed exhausted" provision was adopted fortifies our conviction that the regulation may not be circumvented by a plan's belated creation of an ERISA-compliant claims procedure. The regulation took effect in 2002, and superceded a similar but narrower provision that "deemed" any claims not acted on before the regulatory deadline "denied" (thereby clearing the way for judicial proceedings). *See Linder v. BYK–Chemie USA, Inc.,* 313 F.Supp.2d 88, 93–94 (D.Conn.2004); 29 C.F.R. § 2560.503–1(h) (2000). The "deemed exhausted" provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court—an end not compatible with allowing a "do-over" to plans that failed to get it right the first time. Indeed, in describing the rationale behind the "deemed exhausted" provision, the Notice of Proposed Rulemaking stated that "claimants denied access to the statutory administrative review process ... should be entitled to a full and fair review of their claims in the forum in which they are *first* provided adequate procedural

---

**8.** In her amicus brief, the Secretary argues that her interpretation of the regulation is entitled to the full measure of deference contemplated in *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Indeed, in *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court did grant full *Chevron* deference to an agency interpretation of its regulation that was advanced in an appellate brief. But, as the Seventh Circuit has noted, *Auer* was seemingly undercut by *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), which held

that many forms of agency interpretations that lack the force of law do not merit *Chevron* deference. *See Keys v. Barnhart,* 347 F.3d 990, 993–94 (7th Cir.2003). We need not decide precisely what quantum of deference is owed to resolve this case, however. For the agency interpretation of the "deemed exhausted" provision should be accepted, in any event, because it is persuasive. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Indeed, as we explained above, we believe that the alternative explanation would produce senseless results.

safeguards." ERISA; Rules and Regulations for Administration and Enforcement; Claims Procedure, 63 Fed.Reg. 48390, 48397 (proposed Sept. 9, 1998) (codified at 29 C.F.R. pt. 2560) (emphasis added). And where (as here) the Plan lacked a claims procedure at the time the claimant brought suit, that forum is the district court.

We note also that this interpretation of the "deemed exhausted" provision is consistent with our rather uncompromising approach to the earlier "deemed denied" regulation. Thus, in *Nichols*, we held that the plaintiff's administrative claim to benefits must be "deemed denied" because no timely determination was made; the fact that the plan was in "substantial compliance" with ERISA's deadlines was irrelevant. *Nichols*, 406 F.3d at 107. The court rejected the idea that "substantial compliance can block or delay a plaintiff's access to the federal courts." *Id.* In the instant case, there was no compliance, substantial or otherwise, with ERISA's claim requirements until after Coyne's suit accrued. Like the *Nichols* court, we reject the idea that the small measure of conformity to the regulatory requirements shown in this case can block or delay a plaintiffs' right to sue.[9]

---

**9.** Bayer's other arguments as to why the regulation does not control the outcome here are also not persuasive. Thus, Bayer contends that 29 C.F.R. § 2560.503–1($l$) does not apply to Coyne because he did not file a claim, and hence, was not a "claimant" within the meaning of that provision. But 29 C.F.R. § 2560.503–1(a) defines "claimant" to mean plan participants and beneficiaries—a group that undoubtedly includes Coyne. Nor, in light of our decision that the regulation controls, do we need to consider Coyne's alternative argument that it would be futile for him to avail himself of the Plan's administrative remedies.

## CONCLUSION

For the reasons given above, we hold that, under the "deemed exhausted" provision of 29 C.F.R. § 2560.503–1($l$), an ERISA benefits claimant is not required to exhaust a claims procedure that was adopted only after a suit to recover benefits has been brought. Accordingly, we VACATE the judgment of the district court, and REMAND for that court to decide, in the first instance, Coyne's claim to benefits under the Supplemental Plan.[10]

---

**10.** In resolving this appeal, we express no view as to whether 29 U.S.C. § 2560–503–1($l$) applies in scenarios not presented here: for instance, where existing claims procedures comply substantially with the requirements of ERISA, or where an ERISA-compliant claims procedure is adopted after benefits are first sought, but prior to the filing of suit. *See* U.S. Dep't of Labor, Employee Benefits Security Administration, Frequently Asked Questions About the Claims Procedure Regulation, FAQ F–2, *http://www.dol.gov/ebsa/faqs/faq claims proc reg. html* (last visited June 26, 2006) (expressing the view that "not every deviation by a plan from the requirements of the regulation justifies proceeding directly to court").