FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID BARBOZA,
            *Plaintiff-Appellant,*

v.

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS, a
California corporation; CALIFORNIA
ASSOCIATION OF PROFESSIONAL
FIREFIGHTERS, LONG-TERM
DISABILITY PLAN; CALIFORNIA
ADMINISTRATION INSURANCE
SERVICES, INC., a California
corporation,
            *Defendants-Appellees.*

No. 09-16818

D.C. No.
2:08-cv-00519-FCD-
GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

Argued and Submitted
January 10, 2011—San Francisco, California

Filed June 30, 2011

Before: J. Clifford Wallace, John T. Noonan, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Wallace

8881

## COUNSEL

Geoffrey V. White (argued), Law Office of Geoffrey V. Whilte, San Francisco, California, for the appellant.

Brendan J. Begley (argued), Weintraub Genshlea Chediak, Sacramento, California, for the appellees.

Marcia Bove (argued), United State Department of Labor, Washington, D.C., for amicus curiae the Secretary of Labor.

**OPINION**

WALLACE, Senior Circuit Judge:

David Barboza appeals from the district court's summary judgment in favor of the California Association of Professional Firefighters, that Association's Long-Term Disability Plan, and the California Administration of Insurance Services, Inc. (collectively the Plan). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

**I.**

In March 2008, Barboza filed an action against the Plan for refusing to pay certain long-term disability benefits. Although the parties ultimately agreed that Barboza is entitled to an award of benefits, they still dispute whether the Plan was permitted to offset that award based on certain payments that Barboza received, or at least could have received, pursuant to state law. Without reaching this issue, the district court, upon a motion for summary judgment, dismissed Barboza's claims without prejudice due to his failure to exhaust available administrative remedies under the Plan. Whether the district court erred in doing so is the subject of this appeal.

In addressing that alleged error, we are unconcerned with whether Barboza did in fact pursue all of the administrative remedies available to him; he admits he did not. What we are concerned with is whether Barboza's claim should have been

deemed exhausted pursuant to certain administrative regulations implemented under the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 C.F.R. § 2560.503-1(*l*). According to Barboza and the Secretary of the Department of Labor, who filed an amicus brief on Barboza's behalf, his claims should be deemed exhausted due to the Plan's failure to resolve his request for disability benefits in a timely fashion. *See id.* § 2560.503-1(i).

## II.

We must first consider our jurisdiction over the instant appeal. Ordinarily, the dismissal of an action with prejudice is necessary to provide us with jurisdiction. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). However, our precedent carves out an exception. When a district court terminates an action for a claimant's failure to exhaust administrative remedies, we will treat the matter as final unless the claimant could begin anew or continue the administrative process. *Id.*; *see also Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) (dismissal of an ERISA claim "without prejudice, absent some retention of jurisdiction, is a final decision within the meaning of 28 U.S.C. § 1291, and hence, appealable").

[1] While the district court dismissed Barboza's claims without prejudice, there is no indication that he could begin the administrative process again or somehow continue it. Rather than retain jurisdiction, the district court dismissed Barboza's claims in their entirety and entered judgment in the Plan's favor. Under these circumstances, we hold that for all practical purposes the district court has terminated Barboza's action, which constitutes a final appealable judgment and gives us appellate jurisdiction pursuant to section 1291. *See Arpaio*, 557 F.3d at 1119; *Pension Benefit Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1185 (9th Cir. 1998).

## III.

**[2]** We turn now to Barboza's contention that he should have been excused from pursuing his administrative remedies. As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court. *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). However, when an employee benefits plan fails to establish or follow "reasonable claims procedures" consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted. 29 C.F.R. § 2560.503-1(*l*); *see also Vaught*, 546 F.3d at 633 (remanding where an employee benefits plan failed to satisfy ERISA's procedural requirements); *Eastman Kodak*, 452 F.3d at 223 (holding that plaintiff's ERISA claim should have been deemed exhausted under section 2560.503-1(*l*) and concluding that "substantial compliance" is insufficient).

In resolving this appeal, it is important to clarify the appropriate standard of review. In *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, we held that the "applicability *vel non* of exhaustion principles is a question of law" that "we consider . . . de novo." 50 F.3d 1478, 1483 (9th Cir. 1995). We then stated that a district court's refusal "to grant an exception to the application of those principles is reviewed for abuse of discretion." *Id.* As stated before, the issue presented here is whether Barboza's claims should have been deemed exhausted under section 2560.503-1(*l*). This question of law thus turns on the potential applicability of exhaustion principles, not a discretionary exception to the application of those principles. Accordingly, our review is de novo. *Id.*

### A.

**[3]** To determine if Barboza's claims should have been deemed exhausted, we must ask whether the Plan complied

with ERISA. The answer to that question turns on whether the Plan satisfied 29 C.F.R. § 2560.503-1(i)(1)-(3), the ERISA provision in dispute. That section requires a plan administrator to resolve a claimant's request for benefits within certain time limits. Crucially, the length of time depends upon the nature of the claim (whether or not it is a disability claim) and the type of plan involved (whether or not it is a multiemployer plan).

The general time period for claim resolution is set forth in subparagraph (i)(1)(i). This provision gives a plan administrator 60 days to notify a claimant of any benefit determination after receiving the claimant's request:

> Except as provided in paragraphs (i)(1)(ii), (i)(2), and (i)(3) of this section, the plan administrator shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period. In no event shall such extension exceed a period of 60 days from the end of the initial period. . . .

Certain qualified plans (those with a committee or board of trustees), of which the Plan is one, can further make general claim determinations at regularly-scheduled quarterly meetings. The relevant text of (i)(1)(ii), which is frequently referred to as the "quarterly meeting rule," provides:

> In the case of a plan with a committee or board of trustees designated as the appropriate named fidu-

ciary that holds regularly scheduled meetings at least quarterly, paragraph (i)(1)(i) of this section shall not apply, and, except as provided in paragraphs (i)(2) and (i)(3) of this section, the appropriate named fiduciary shall instead make a benefit determination no later than the date of the meeting of the committee or board that immediately follows the plan's receipt of a request for review, unless the request for review is filed within 30 days preceding the date of such meeting. . . .

**[4]** Disability claims have different timing rules. For these claims, plans have 45, not 60, days and are eligible to have an extension of an equal duration to make benefits determinations. *Id.* § 2560.503-1(i)(3)(i). Multiemployer plans (that is, plans requiring contributions from multiple employers), however, may still rely on quarterly meetings to resolve disability claims. *Id.* § 2560.503-1(i)(3)(ii); *see also* 29 U.S.C. § 1002(37)(A) (defining multiemployer plans). The relevant subparagraphs provide:

> (i) Except as provided in paragraph (i)(3)(ii) of this section, claims involving disability benefits . . . shall be governed by paragraph (i)(1) of this section, except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph.

> (ii) In the case of a multiemployer plan with a committee or board of trustees designated as the appropriate named fiduciary that holds regularly scheduled meetings at least quarterly, paragraph (i)(3)(i) of this section shall not apply, and the appropriate named fiduciary shall instead make a benefit determination no later than the date of the meeting of the committee or board that immediately follows the plan's receipt of a request for review . . . .

29 C.F.R. § 2560.503-1(i)(3).

**[5]** At first glance, application of these rules seems straightforward. Barboza submitted a disability claim to the Plan, which is not a multiemployer plan; accordingly, the Plan should have made its determination within 45 days (or 90 days, assuming the Plan qualifies for an extension). Because the Plan failed to do so, Barboza's claim should have been deemed exhausted under section 2560.503-1(*l*).

**[6]** But there is a complication: the relevant provisions are circular in that each timing-rule subparagraph refers to another of the timing subparagraphs. The circle works as follows: subparagraph (i)(1)(i) (the general 60-day rule) is subject to exceptions set forth in paragraphs (i)(2), (i)(3), and subparagraph (i)(1)(ii); subparagraph (i)(1)(ii) (the quarterly meeting rule), in turn, is subject to exceptions set forth in paragraphs (i)(2) and (i)(3); and, completing the circle, subparagraph (i)(3)(i) (the 45-day disability rule) is subject to the rule provided in (i)(1) ("claims involving disability benefits . . . shall be governed by paragraph (i)(1) of this section, except that a period of 45 days shall apply").

Based on this circular structure, a reader could begin with (i)(1)(i), go to (i)(3), return to (i)(1)(i), and then go back to (i)(3), and so on, until the end of time. As a result, section 2560.503-1(i) is subject to conflicting interpretations. Our role in cases involving these types of circular provisions is to employ traditional rules of regulatory interpretation, while also according the appropriate level of deference to the litigants' proposed constructions, to determine the correct—or, in this case, defer to a reasonable—interpretation.

Here, the Plan asserts that we should start at (i)(3) (the disability rule), move to (i)(1)(i) (the general rule), continue to (i)(1)(ii) (the quarterly meeting rule), and then, instead of moving to (i)(3)(ii) (to which (i)(1)(ii) ultimately points), stop. If the regulation is interpreted in this manner, the Plan contends it was eligible to use quarterly meetings to resolve disability claims, even though the Plan is not a multiemployer

plan. Barboza and the Secretary, on the other hand, argue that there is no logical reason to stop at subparagraph (i)(1)(ii). They would continue the circle to (i)(3)(ii), and stop there. According to them, subparagraph (i)(3)(ii) restricts the quarterly meeting rule to multiemployer plans, at least in the context of disability claims.

## B.

**[7]** Upon careful navigation through section 2560.503-1(i)'s circular provisions, we conclude that Barboza's interpretation, which emphasizes the specific rules governing disability claims, is more consistent with the text and structure of the regulation. Under our precedent, we construe regulations so as to give effect and meaning to each of a regulation's subsections, if possible. *Boeing Co. v. United States*, 258 F.3d 958, 967 (9th Cir. 2001). Where two regulations or subsections appear to be in conflict, we must treat the "more specific provision" as "an exception to[ ] a more general provision." *Sec. Pac. Nat'l Bank v. Resolution Trust Corp.*, 63 F.3d 900, 904 (9th Cir. 1995). Under subparagraph (i)(3)(ii), only multiemployer plans are permitted to resolve disability claims at quarterly meetings. *See* 29 C.F.R. § 2560.503-1(i)(3)(ii). Yet, the Plan's proposed approach would render this subparagraph superfluous by permitting non-multiemployer plans to resolve disability claims pursuant to the time limits outlined in the more generalized version of the quarterly meeting rule. *See id.* § 2560.503-1(i)(1)(ii). Because Barboza's interpretation gives effect to subparagraph (i)(3)(ii) and treats this specific provision as an exception to the general application of the quarterly meeting rule, we are inclined to accept that interpretation.

To resolve this appeal, however, we need not be convinced that Barboza's interpretation is the better one. When evaluating conflicting interpretations of an administrative regulation, we are required to give "substantial deference" to the agency's interpretation of its own regulations. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 328 (2008); *see also Chevron U.S.A., Inc.*

*v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). This means that we must defer to the agency's interpretation unless it is "plainly erroneous or inconsistent with the regulation." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 672 (2007); *see also Auer v. Robbins*, 519 U.S. 452, 462 (1997) (deferring to agency interpretation advanced in the form of a legal brief). Stated otherwise, "unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation," deference is required. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotation marks omitted).

**[8]** According to the Secretary of Labor, we should construe section 2560.503-1(i)'s timing rules to preclude non-multiemployer plans from using the quarterly meeting rule to resolve disability claims. The Plan does not identify anything in the text or regulatory history of section 2560.503-1(i) compelling an alternative reading. Thus, while the regulation is circular and somewhat ambiguous, the plain language is entirely consistent with the Secretary's approach. Therefore, we must defer to the Secretary. *See Riegel*, 552 U.S. at 328; *Thomas Jefferson Univ.*, 512 U.S. at 512.

Deference is especially appropriate in this case because the Secretary's approach is consistent with her stated purpose for promulgating the regulation. *See Thomas Jefferson Univ.*, 512 U.S. at 512; *Bassiri v. Xerox Corp.*, 463 F.3d 927, 929-30 (9th Cir. 2006) (deferring to statement of agency intent contained in a regulatory preamble). When the Secretary revised section 2560.503-1(i) in November 2000, she stated in the regulation's preamble that the revisions were intended to "shorten[ ] the time periods for making initial benefit claims decisions and decisions on appeal of denied claims." *See* Pension and Welfare Benefits Administration, 65 Fed. Reg. 70,246 (Nov. 21, 2000). To shorten the time period for resolving disputes over "disability benefits," the Secretary explained that "[t]he extension of time for plans administered by boards of trustees

or committees that meet at least quarterly is available, under the regulation, *only for multiemployer plans.*" *Id.* at 70,247-48 n.10 (emphasis added). Hence, the Secretary's stated interpretation of section 2560.503-1(i)(3)(ii) is not only compatible with the regulation's text, it also finds support in the agency's reasons for revising the regulation.

## IV.

**[9]** The district court adopted the Plan's reading of section 2560.503-1(i) without the benefit of the Secretary of Labor's interpretation of that provision. Deferring to the Secretary's plausible approach, we hold that where a claimant seeks review of his or her disability claims, the quarterly meeting rule is restricted to multiemployer plans. Accordingly, the Plan was required to render a decision within ninety days of Barboza's administrative appeal. Inasmuch as the Plan failed to do so, Barboza's claims must be deemed exhausted.

**REVERSED and REMANDED.**

Barboza is entitled to his costs on appeal.